## 48381. MOBLEY v. THE STATE.

CLARK, Judge. This appeal supported by the requisite review certificate is from two intermediate trial court orders. One of these orders denied the accused's discovery motion seeking to obtain for examination by defendant's own experts the evidentiary substance alleged to be marijuana. The other ruling denied a motion to suppress the evidence which the police officers had taken from defendant's automobile at the time he was halted for a speeding violation.

While on patrol duty at approximately 3 a. m. two Brunswick police officers riding in a marked police car had their attention called to the defendant's automobile as he was not only exceeding the

speed limit but apparently riding his brakes. When defendant's vehicle was halted he descended on the driver's side and walked toward the patrol car where the police officer who had been driving met him and asked for his operator's license. The other officer meanwhile proceeded to defendant's parked automobile because of his observing another individual to be a passenger. There was a conflict in testimony as to the manner in which the search of the car was made which resulted in seizure of a bag later asserted to be marijuana. The state's version sought to make a case of "clear view" in that the police officer stated that while looking for weapons by means of shining his flashlight around the interior of the car through its windows he saw the bag on the floor between the front seat and the brakes. As to his consequent search, his words emphasized that "I wasn't searching the automobile; I'm searching for my own protection." (T. 14). Since the passenger was a female whose conduct caused no suspicion he was apparently apprehensive of a "Bonnie and Clyde" situation. The passenger contradicted this testimony, she stating the officer had opened the left front door ʋwithout permission and while using the flashlight "felt around." She also testified she had not seen the bag. No search was made of the glove compartment nor of the locked trunk.

Defendant enumerates the following errors: "(1) The court erred in its ruling that the case fell within 'the plain view' area. (2) The court erred in its ruling that there was no search involved in the case. (3) The court erred in its ruling that this was not a search incident to a traffic violation. (4) The court erred in overruling discovery motions for the defendant."

1. A search of a vehicle may not be made incident to the arrest of the driver for a mere traffic violation. *Rowland v. State,* 117 Ga. App. 577 (161 SE2d 422). The reason for this limitation is explained in these words in Amador-Gonzalez v. United States, 391 F2d 308, 316 (5th Cir. 1968): "Since incidental searches are limited to fruits of the crime or instrumentalities used in the commission of the crime for which the arrest is made, there can be no lawful incidental search following an arrest for a traffic violation. There are no fruits or instrumentalities of the crimes of unlawful parking, speeding, driving without registration or license . . . Since there are no fruits or instrumentalities of such crimes, there can never be a reasonable incidental search no matter how lawful the arrest."

2. This limitation does not prevent a reasonable search upon the

person detained and the area within such person's immediate presence for the purpose of "protecting the officer from attack." Code Ann. § 27-301. Accordingly, the officer was entitled to make a reasonable search of the immediate area for weapons. The officer here testified this to be his intent in looking in the car. His actions would therefore fall within Code Ann. § 27-301 providing they were reasonable.

3. Were the policeman's actions here valid? The answer must depend on the officer having reasonable cause for belief that the contents of the automobile offend against the law. Carroll v. United States, 267 U. S. 132 (45 SC 280, 69 LE 543, 39 ALR 790); *Vaughn v. State,* 126 Ga. App. 252, 255 (190 SE2d 609). The state's brief at page 2 argues: "The police officer was merely doing his duty in protecting himself and his riding partner in merely going up to the parked vehicle that contained another passenger and just happened to observe and see in plain and clear view the clear plastic bag containing green vegetation in the said automobile. Upon recognizing the clear plastic bag of green vegetation, the officer then opened the door and seized this contraband item." But the transcript does not support this assertion as to the facts. We quote all the pertinent portions from the transcript: "[S]o I walked around, shined my light around there and the lady was sitting there in the front. So I walked all the way around, just looking, you know, for any kind of weapon or anything; that's what we mostly be checking out for. There was a bag sitting right down there, probably by the brakes, you know, where the brakes down there . . . There was a bag sitting there. Q. A bag of marijuana? A. After we examined it, had it examined to find out it was marijuana. Q. It was marijuana? A. Yeah . . . Q. What was it that you saw down there? A. I saw a bag laying down there. I later found, after examining it, it was marijuana." (T. 12, 13). And later in the transcript, the police officer testified that: "And then I shined my light around in there, and I saw this bag. Of course, it was sitting there right between, where I could see it in the brakes down there . . ." (T. 14).

A further reference to the article is on page 16 of the transcript where the police officer said "The bag was in front, where the steering wheel—this is the steering wheel right here (gesturing); Okay, and the brakes right here, and the bag was sitting, it's between the brakes and the steering wheel."

The foregoing establishes only that the police officer saw a bag which is not described as having been transparent. It is not

described as being "clear plastic." Nor does the officer state that his observation of that specific bag or its type or its contents would cause him to have a reasonable belief that it contained contraband. It was only later that a physical examination disclosed the contents to be marijuana.

As to the state's assertion that the contents were seen to be "green vegetation," this answer was eliminated from consideration by us as the answer containing these words was eliminated by the trial judge sustaining the defense objection. (T. 13). We are limited to the facts contained in the record on appeal. *Hunt v. Denby,* 128 Ga. App. 523, 526 (197 SE2d 489); *Tingle v. Arnold, Cate & Allen,* 129 Ga. App. 134 (199 SE2d 260). "Error must appear from the record sent to this court by the clerk of the trial court." *Moye v. State,* 127 Ga. App. 338, 341 (193 SE2d 562). Furthermore, the term "green vegetation" would apply to such lawful viands as collard greens, mustard greens, and turnip greens.[1]

"The 'plain view' doctrine is applicable only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564). See also *Holtzendorf v. State,* 125 Ga. App. 747, 749 (188 SE2d 879).

The state failed to carry its burden of proving that the search and seizure were lawful as required by Code Ann. § 27-313. The motion to suppress should have been sustained.

4. The final assignment for consideration was the denial by the trial court of the motion by the accused for the district attorney to make available to defendant a sample of the seized substance alleged to be marijuana so that the defense could have an independent scientific inspection.

Headnote 2 of *Whitlock v. State,* 124 Ga. App. 599 (185 SE2d 90) succinctly states,"There is no statute or rule of practice allowing a defendant in a criminal case pretrial discovery and inspection of evidence in possession of the State." On certiorari of that case

---

[1]As this was a South Georgia case the trial judge might well have taken judicial notice that collard, mustard, and turnip greens are favorite foods of that region, frequently leading to the gustatory expletive: "Man, that's good eatin'!"

our Supreme Court said, "We need not cite here all the many cases before this court in which we have held criminal discovery on behalf of the defendant may not be compelled. There is no state law existing which would allow the defendant as a matter of right to discover from a district attorney or other prosecuting officer of the state evidence, documentary or otherwise, for use by him or his counsel before trial. *Bryan v. State,* 224 Ga. 389 (162 SE2d 349) (1968), *Walker v. State,* 215 Ga. 128 (109 SE2d 748) (1959). In addition, the Supreme Court of the United States has held that pretrial discovery in favor of defendants is not required by considerations of due process, see Palermo v. United States, 360 U. S. 343 (1959), and 18 U. S. C. § 3500, in the absence of a showing that the evidence denied disclosure of by the prosecution upon request was materially favorable to the accused either as direct or impeaching evidence. Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215). See, also, Williams v. Dutton, 400 F2d 797 (5th Cir. 1968), and Note, The Duty of the Prosecutor to Disclose Exculpatory Evidence, 60 Colum. L. Rev. 858 (1960)." *Whitlock v. State,* 230 Ga. 700, 703 (198 SE2d 865).

It should be noted that the U. S. Supreme Court case of Brady v. Maryland cited in the foregoing quotation from our Supreme Court does not require disclosure of all of the prosecution's evidence. As was explained in United States v. Eley, 335 FSupp. 353, 358 (N. D. Ga. 1972): "Brady is an expression of the constitutional mandate of due process and declares that any trial, whether in state or federal court, is inherently unfair if the accused has not been apprised of information in the possession of the prosecution which may exonerate him or reduce punishment."

Certainly the state is not called upon to supply the accused with the seized substance when proof by expert testimony that it is marijuana is the essential element that must be proved by the state. See *Henderson v. State,* 227 Ga. 68 (179 SE2d 76) and *Rautenstrauch v. State,* 129 Ga. App. 381 (199 SE2d 613).

The trial judge was correct in denying the defendant's discovery motion for an independent expert's examination of the evidence.

As shown by our citations on the subject of discovery in criminal cases we ruled in conformance with judicial precedents. On a personal note the writer is constrained to express the hope of the three judges constituting this division that the General Assembly will at its forthcoming session undertake to provide reciprocal

discovery procedures for criminal cases. As was said in Williams v. Florida, 399 U. S. 78, 82, "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as 'due process' is concerned, for [a rule] which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence."

*Judgment affirmed in part; reversed in part. Hall, P. J., and Evans, J., concur.*

ARGUED JULY 10, 1973 — DECIDED OCTOBER 25, 1973.

*J. S. Hutto & Associates, Randall M. Clark, G. Carroll Palmatary,* for appellant.

*Glenn Thomas, District Attorney,* for appellee.