## 49301. QUAID v. THE STATE.

CLARK, Judge.

Was the appellant, a New Orleans attorney, an innocent victim of his client's vindictive vendetta resulting from the latter's belief that the barrister had betrayed ("fingered") him so that his conviction was solely from a concaternation of criminating circumstances? Was the lawyer's interest in this case which involved a burglary of almost $8,000,000 of negotiable bearer municipal bonds legitimately limited to the reward of $100,000 paid him for providing information leading to the recovery of the stolen securities? or—as charged by the state—was appellant a willing participant with three other indictees in a conspiracy in which his assignment was to handle disposition of such securities as might be the fruits of the plot?

This suspenseful story had its inception from a discussion between three men, LeBlanc, Gaudin, and Alley, concerning "get rich quick" opportunities such as finding buried treasure or having a lucky number in Irish Sweepstakes prizes. From this developed a plan for burglarizing the Atlanta office of Robinson-Humphrey Co., where Alley was employed. As "inside man," Alley provided LeBlanc and Gaudin with safe combinations, a diagram of the firm's lay-out, and information as to disconnecting the burglar alarm.

On the evening of March 15, 1973, prior to the office building's security guard going on duty, LeBlanc and Gaudin entered the First National Bank Tower. They hid in the men's room on the twentieth floor where the securities establishment had its place of business. Then during the early morning hours of March 16 they used their duplicate keys to make their felonious entry and to accomplish their design of stealing selected municipal negotiables identifiable only by numbers thereon. Again they hid in a rest room until about 7:30 a. m. when, undetected because appearing to be ordinary business people, they left the building with four brief cases containing the stolen securities after which LeBlanc took

possession of all of the pilfered goods. Telephone company records showed a long distance call placed by LeBlanc at 7:56 a. m. to appellant's residence.

A few days afterwards LeBlanc made a trip to New Orleans. While there, on March 22, LeBlanc conferred with Quaid. The attorney contended this visit was legitimate and originated in connection with matters in which he was representing LeBlanc which had arisen during the latter's previous residence in Louisiana. Quaid contends his activities in all respects were as attorney-client and not tainted by any illegality. His version is that during this conference on March 22 LeBlanc presented a hypothetical situation creating the possibility of stolen securities being returned to their rightful owner for a monetary consideration. In order to learn the procedures generally used for this purpose Quaid placed a telephone call to an Atlanta friend in the securities business who in turn called a New York City acquaintance to learn if a finder's fee would be paid by an insurer for recovery of lost or misplaced bonds. From this Quaid was told that an Atlanta brokerage firm presently had such an embarrassing situation and that someone from that concern would call him.

After Quaid left his office that same day for Dallas his telephone receiving device recorded a message from Mahoney, an executive with Robinson-Humphrey. One week later (March 29) Quaid called Mahoney. Both before and after March 16, the date of the theft, there were telephone calls between Quaid and LeBlanc and Gaudin according to telephone company records. LeBlanc testified these were concerning disposition of the stolen bonds but Quaid stated these were on the basis of an attorney-client relationship. He explained in detail the other legitimate matters which he was handling as lawyer for Gaudin and LeBlanc to support his position in this respect.

During the period of the investigation, an anonymous telephone call was received by Mahoney on March 26, the caller revealing the safe combination and inquiring as to arrangements for payment if the stolen bonds were returned. The anonymous caller was LeBlanc

who then made another such call on the next day wherein he described certain bonds in his possession to indicate the anonymous caller's familiarity with the pilfered securities and offered to return all of the stolen bonds for $350,000. Both telephone conversations discussed obtaining an intermediary to conduct negotiations and return of the bonds so that the anonymous party (LeBlanc) would feel safe in dealing with Mahoney.

On April 6 Quaid went to Atlanta and presented Mahoney with an employment contract providing for payment of $500,000 upon recovery of the bonds. Mahoney then informed him Robinson-Humphrey had meanwhile obtained coverage from Lloyd's of London so that payment would not exceed $100,000 for information leading to recovery of their bonds. Mahoney also informed appellant he had received an anonymous call from someone wanting to sell the bonds for $350,000. When Quaid left Mahoney's office, he called LeBlanc and confirmed this and thereupon told LeBlanc to "Go to hell." Quaid then flew to New Orleans and upon arrival there first sought to contact the Atlanta Police Department but upon being unable to do so, called Mahoney and gave him a telephone number of LeBlanc and the type of car LeBlanc was driving. As a result, LeBlanc was arrested April 7th and all of the bonds with the exception of $150,000 were recovered. Thereafter, $100,000 was paid to Quaid by Robinson-Humphrey Company.

In the interim LeBlanc had gone to New Orleans and while in Quaid's office threatened he would implicate Quaid unless Quaid paid him $50,000. Threats were also made to Quaid's wife.

LeBlanc finally concluded that he "had been fingered" by Quaid and proceeded on April 17th to make a confession in return for a promise of a reduced sentence. In this confession he implicated Quaid, Alley and Gaudin. He also surrendered the remaining securities.

Upon being arrested, Alley made a full confession as to his participation. He implicated Quaid only indirectly, this being his statement that when the conspiracy originated he had been told by his confederates there was a New Orleans attorney, name never mentioned, who

would make the necessary arrangements to dispose of the bonds and who would receive an even split with the other three conspirators on such amounts as might be derived from sale or disposal of the bonds.

Other pertinent facts will be discussed in the opinion.

Alley and LeBlanc pleaded guilty and testified as witnesses for the state in the trial jointly of the other two co-indictees, each of whom was represented by his personal counsel. Each was found guilty by independent verdicts. After the jury had deliberated for 45 minutes on sentencing and reported a division of 7 to 5, the trial judge discontinued their deliberations and sentenced each to 10 years. The trial court's action in this respect is enumerated as one of twelve assignments of error presented by Quaid's appeal. The companion appeal by Gaudin was dismissed under our Rule 14 (a) for failure after notification to file briefs and enumerations of error.

1. Appellant's able attorney ardently argues a reversal is required under enumerations of error 1 and 2, these being on general grounds that the verdict is contrary to the evidence and without evidence to support it. The basis of this argument is that the testimony of LeBlanc as an accomplice is not sufficiently corroborated to satisfy the rulings of *Ivey v. State,* 91 Ga. App. 455 (85 SE2d 829), *Wiggins v. State,* 80 Ga. App. 258 (55 SE2d 842), and *Rawlins v. State,* 124 Ga. 31 (52 SE 1). In an eloquent argument covering 28 pages appellant's advocate analyzes the extensive testimony developed during the five days trial to show absence of the requisite element, namely: corroborating circumstances which in themselves and independently of the testimony of the accomplice directly connect the defendant with the crime or lead to the inference that he is guilty.

In *Pitts v. State,* 128 Ga. App. 434, 435 (197 SE2d 495) this court states the general principle: "[T]he law specifically lays down the rule that if the accomplice is *corroborated in material parts of his testimony,* then he may be believed by the jury as to other material parts as to which there is no corroboration." That opinion further gives the rules with reference to the extent of corroboration which is required. Omitting the citations

which are contained therein we re-state these rules to be:

(1) It is not essential that the testimony of the accomplice should be corroborated in every material particular.

(2) It is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular.

(3) Such corroborating circumstances need not be enough to amount to another witness or sufficient to support one to that extent.

(4) Slight evidence of corroboration connecting defendant with the crime is sufficient.

(5) The sufficiency of corroboration of the accomplice is entirely a matter for the jury.

Although the three judges comprising this division dissented from the majority opinion in the *Pitts* case, our disagreement was not with these controlling legal principles, but with the application thereof to the facts, because we regarded the evidence there insufficient to sustain the conviction.

In the case at bar we find that the supporting evidence satisfies these five tests. Such corroborative testimony may be summarized thusly: Telephone company records confirming long-distance calls between LeBlanc, Gaudin, and Quaid both before and after the burglary date, including the significant call at 7:56 a. m. on March 16th, shortly after the crime had been completed; the scientific testimony showing that a sample bond which LeBlanc testified had been delivered to Quaid was duplicated on the same copying machine as a letter which appellant admitted had been copied by him in New Orleans; the proof of appellant's fingerprints being found on the sample bond and also on the copy thereof; testimony that two shipping labels from appellant addressed to him were typed on the same typewriter as a contract prepared by the attorney; appellant's conflicting statements to an F.B.I. agent; and the records of Delta Air Lines verifying Quaid's flights to and from Atlanta at stated times and dates. Additional circumstantial corroboration was contained in the testimony of the co-indictee, Alley.

In his testimony, appellant gave such logical explanations concerning this corroborative testimony as would have justified the jury to acquit him if they had accepted his version. But, the jury, as "Doctors of Doubt,"[1] serves as our vehicle for determination of credibility as between the witnesses, not the appellate court. "The corroboration may be strong or it may be slight, but whether it is sufficient to connect the accused with the commission of the crime . . . is a question to be decided by a jury." *Rawlins v. State,* 124 Ga. 31, 60, supra. "The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence." *Hargrove v. State,* 125 Ga. 270, 275 (54 SE 164); *Waldrop v. State,* 221 Ga. 319, 320 (1) (144 SE2d 372). See also *Lindsay v. State,* 227 Ga. 48, 49 (1) (178 SE2d 848) and *Vaughn v. State,* 126 Ga. App. 252 (14) (190 SE2d 609).

2. The next three enumerations of error (3, 4 and 5) deal with the denial in each of three instances of motions for mistrial made by the appellant based on allegedly improper remarks in the district attorney's closing argument. We will deal with them separately. But all three rulings are governed by the recent case of *Counts v. Moorehead,* 232 Ga. 220 (206 SE2d 40) in which the Supreme Court reiterated that "This court has held that where the instruction by the court to the jury to disregard the remarks was full, it in effect amounted to a rebuke of counsel" and cited in support thereof *Wells v. State,* 194 Ga. 70, 75 (20 SE2d 580) and *Spell v. State,* 225 Ga. 705 (171 SE2d 285). See also the recently decided case of Donnelly v. DeChristoforo, 415 U. S. — (94 SC 1868, 40 LE2d 431), dealing with the impact of improper

---

[1] This definitive phrase was devised by that master of words, Chief Justice Logan Bleckley, in *Central R. Co. v. Ferguson,* 63 Ga. 84, 85: "The jury are the best doctors of doubt that we know of . . ."

remarks followed by the trial court's specific disapproving instructions. There it is recognized that curative instructions from the court generally serve to protect the defendant's right to a fair trial and due process. We find their language to be appropriate to these three enumerations of error: "Although some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment in this case is hardly of such character." 40 LE2d 437. At the same time we deem it proper to concur in the sentiment contained in footnote 23, Id., p. 439, which reads: "We do not, by this decision, in any way condone prosecutorial misconduct, and we believe that trial courts, by admonition and instruction, and appellate courts, by proper exercise of their supervisory power, will continue to discourage it."

(A) One of these incidents occurred when the district attorney said: "Everybody is just going to let Alley and LeBlanc go to jail but don't dare touch Gaudin or Quaid. Just because Quaid is a lawyer doesn't make him holier than thou. If we didn't prosecute people based upon valid evidence for some reason because they were professional, we certainly wouldn't be upholding our job. We take an oath to prosecute the guilty and release the innocent." (T. 858).

Enumeration No. 3 objects only to the last sentence but we have quoted the remainder of the context in order to complete the picture. Thereby the argument as a whole is shown not to be an expression of personal opinion of defendant's guilt or innocence, which is forbidden. *Sparks v. State,* 59 Ga. App. 883 (2 SE2d 506); also see *Grayhouse v. State,* 65 Ga. App. 853 (16 SE2d 787). The impropriety, if any, was dealt with by the trial court's corrective action in directing the jury not to consider the statement made by the district attorney. "Where during oral argument an assistant district attorney makes statements deemed by the defendant to be improper and upon a motion for mistrial being made the trial court immediately instructs the jury not to consider such argument, no harmful error appears in the overruling of the motion for mistrial unless it is manifest that an abuse of the trial court's discretion has occurred." *Cooper v. State,* 229 Ga. 277, 278

(7) (191 SE2d 27). "The gist of the error is that where the rebuke is not made or cautionary instructions given the improper argument goes with the apparent sanction of the court [Cit.]" *Howard v. Renfroe,* 93 Ga. App. 59, 62 (90 SE2d 598).

(B)   Another mistrial motion was made when the prosecutor said: "Mr. Quaid, he says he's a man of good character, but you know Judas was too until he got his thirty pieces of silver." (T. 861). The district attorney contended the statement was a legitimate inference since "Mr. Quaid has sold out the legal profession by his conduct for one hundred thousand dollars." (T. 861).

All advocates make use of imagery and biblical references. "[F]igurative speech has always been regarded as a legitimate weapon in forensic warfare." *Taylor v. State,* 121 Ga. 348 (7) (49 SE 303). "Flights of oratory and false logic do not call for mistrials or rebuke. It is the introduction of facts not in evidence that requires the application of such remedies." *Patterson v. State,* 124 Ga. 408, 409 (52 SE 534); *Powell v. State,* 179 Ga. 401, 412 (4) (176 SE 29). Jurors are not misled by hyperbolic patois frequently used by trial lawyers as they know the aptness of the trial judge's comment that "there was no evidence with reference to Judas or thirty pieces of silver." (T. 862). "Attorneys should be allowed all reasonable latitude in the argument of cases to the jury, provided they do not go outside the facts legitimately appearing from the trial, and lug in extraneous matters as if they were a part of the case." *Smith v. State,* 74 Ga. App. 777 (4) (41 SE2d 541).

(C)   The fifth enumeration contends error in denial of a mistrial when defense counsel objected to the prosecutor's argument dealing with the issue of good character. Defendant had testified in detail as to positions of responsibility that he had held which were illustrative of his good character. These included service as a captain in the military police, assistant district attorney, a member of the New Orleans Metropolitan Crime Commission, and attorney in charge of a Louisiana grand jury studying organized crime. The only character witness introduced by him was a doctor, who was also a personal friend. To rebut defense counsel's argument as

to his client's good character the prosecutor commented: "If his reputation is so great in the legal community, why isn't there a district attorney in here who knew him while he was on the staff down there? Why isn't there a lawyer in here who has practiced with him if his reputation is so great in the city of New Orleans?" (T. 846-7). Thereupon defense counsel moved for a mistrial which was denied. This ruling was correct. "While no presumption of guilt arises by failure of the defendant to introduce witnesses in his own behalf, yet it is proper for the solicitor to argue to the jury any inferences of fact which might reasonably be arrived at from the evidence." *Dorsey v. State,* 204 Ga. 345 (3) (49 SE2d 886). See also *Moore v. State,* 129 Ga. App. 612 (2) (200 SE2d 320); *Vaughn v. State,* 126 Ga. App. 252, 263 (190 SE2d 609); *Berry v. State,* 123 Ga. App. 616 (1) (182 SE2d 166).

3. Defendant's sixth enumeration attacks the trial judge's action in removing the sentencing phase from the jury and imposing sentence from the bench. In the bifurcated procedure then used the jury had deliberated forty-five minutes as to sentences for Quaid and Gaudin. The judge then inquired of the jury as to their division and received the answer, "Seven of us are in one area and five of us in another." Although the foreman further indicated that "I believe five minutes and we could get together," the trial judge decided it was proper for him to exercise the right given him under the then existent statute that "if the jury cannot, within a reasonable time, agree as to the punishment, the judge shall impose sentence within the limits of the law." In *Bowman v. State,* 231 Ga. 220 (1) (200 SE2d 880) where the period of time involved was 31 minutes of jury consideration before the judge took over, the court said: "We cannot say that the trial judge acted unreasonably or deprived the appellant of due process and equal protection of the law in taking the issue of sentence from the jury and fixing sentence. The jury found that the appellant was guilty of the offense charged and the fact that the trial court fixed the sentence did not deprive him of the right to trial by jury." See also *Smith v. State,* 228 Ga. 293 (3) (185 SE2d 381), where the time involved was 37 minutes. There is no merit to this enumeration of error.

4. The next assignment contends error in the trial court's denial of a mistrial motion based upon a newspaper report of the trial. The allegedly prejudicial portion was the concluding paragraph in which the prosecutor was quoted as saying that a forthcoming witness would testify that defendant "was paid by Robinson Humphrey before it was learned that he was allegedly part of the group which took the bonds." Appellant asserts the publication was harmful within the U. S. Supreme Court rulings of Cox v. Louisiana, 379 U. S. 559, 583 (85 SC 476, 13 LE2d 487), Stroble v. California, 343 U. S. 181, 201 (72 SC 599, 96 LE 872) and Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600). We do not agree that the incident here complained of was of the type and extent to come within the ambit of those causes celebres. Neither the denial of defendant's mistrial motion nor the court's colloquy in connection therewith which appellant asserts to be error constituted an infringement of the constitutional right of the accused to a fair trial. Accordingly, we find no merit in the seventh enumeration of error.

5. The next enumeration of error (No. 8) contends the court erred in failing to sustain a defense motion to strike the testimony of a state expert witness as to his opinion concerning certain documents having been copied upon the same machine. This motion was not made until after both sides had completed presentation of all their evidence. In explanation of his having failed to object at the time the testimony was presented during the trial, appellant's attorney pointed to "the lengthiness of the trial [one week] and all of the voluminous amount [100 documents] of evidence that had been introduced." (T. 748-753).

Appellant's brief argues that "Section 38-709 of the Annotated Code of the State of Georgia was not complied with and neither was appellant's motion for discovery filed prior to trial complied with." Section 38-709 requires that "Such other new papers, when intended to be introduced, shall be submitted to the opposite party before he announces himself ready for trial." It would appear this section is not here applicable since the comparisons were not then available and were not made

until mid-way in the trial. Additionally, this testimony was submitted as rebuttal to evidence presented by the defense.

With reference to discovery our Supreme Court stated in *Henderson v. State,* 227 Ga. 68, 77 (179 SE2d 76) that "There is no Georgia statute nor rule of practice which requires the district attorney to open his files for the accused, nor is the accused entitled as a matter of right to receive copies of police reports and investigation reports made in the course of preparing the case against the client. [Cits.]" See also *Pass v. State,* 227 Ga. 730, 737 (12) (182 SE2d 779) and *Clark v. State,* 230 Ga. 880 (1) (199 SE2d 786). Additionally, it would appear that the failure to object when the expert testimony was originally presented constituted a waiver. *Campbell v. State,* 231 Ga. 69, 77 (3b) (200 SE2d 690). We find this enumeration to be without merit.

6. Defendant complains in Enumeration No. 9 that the trial court declined to use the exact language of his request numbered 4. As the subject was adequately and properly covered (T. 866) in the charge, there was no error. "Examination of the charge that was given shows that it substantially covered the principles embodied in the requested charges, and therefore there was no error in failing to give the requested instructions in the exact language requested." *Campbell v. State,* 231 Ga. 69, 79 (4), supra.

7. Defendant contends the trial court erred in not granting a mistrial for prejudice to defendant when a witness testified that Gaudin, the co-defendant who was his employer, had threatened him when he discovered the witness' name on the state's list of witnesses.

The evidence was clearly admissible against the co-defendant. "[A]cts, conduct and statements of a conspirator, not only in the perpetration of a common criminal enterprise but in an effort at concealment, are admissible. [Cits.]" *Hutchins v. State,* 229 Ga. 804, 806 (194 SE2d 442).

Further, the transcript reveals that although defendant and the co-defendant were jointly tried, they were represented individually with defense evidence being presented separately for each. Additionally,

defendant's counsel cross examined the witness to show defendant's lack of involvement in the threat. "Upon the question as to whether a declaration of mistrial is required, 'unless it is apparent that a mistrial was essential to preservation of the right of fair trial, the discretion of the trial judge will not be interfered with.' *Manchester v. State,* 171 Ga. 121 (7) (155 SE 11)." *Trammell v. Atlanta Coach Co.,* 51 Ga. App. 705, 710 (181 SE 315).

Defendant was not prejudiced by the presentation of the evidence in this manner.

8. The next enumeration of error (No. 11) deals with admission into evidence of tape recordings made by Mahoney of his telephone conversations with LeBlanc and the defendant. Appellant asserts error in that (a) the recordings were not made available to him prior to trial in accordance with his motion for discovery and (b) recordings of these conversations were illegal as being contrary to provisions of Code Ann. § 26-3001.

As has been previously stated, "criminal discovery on behalf of the defendant may not be compelled. . . In addition, the Supreme Court of the United States has held that pretrial discovery of defendants is not required by considerations of due process [cits.], in the absence of a showing that the evidence denied disclosure of by the prosecution upon request was materially favorable to the accused either as direct or impeaching evidence. [Cits.]" *Whitlock v. State,* 230 Ga. 700, 703 (198 SE2d 865); *Mobley v. State,* 130 Ga. App. 80, 84 (202 SE2d 465). Additionally, it should be noted that appellant was made acquainted with the material contained on the tapes through a prior *in camera* hearing.

The recording between Mahoney and defendant was not illegal as it came within the exception stated in Code Ann. § 26-3006. This exception permits recording where "the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent." This exception is not limited to law enforcement officers as is contended by appellants as they are dealt with and excepted in Code Ann. § 26-3004.

In *Cross v. State,* 128 Ga. App. 837, 839 (198 SE2d

338) our court stated: "Anyone who makes a statement to another knows that the person to whom it was made may repeat it to others who may use it against him. The mere fact that the person to whom the statement was directed made a recording without the knowledge of the person recorded does not vitiate its evidentiary value."

Moreover, as Mahoney had already testified as to these conversations, the tape recordings were cumulative. "[A]dmission of evidence will not be grounds for reversal if the same evidence was admitted elsewhere without objection. [Cit.]" *Brown v. State,* 129 Ga. App. 152 (3) (198 SE2d 909).

There is therefore no merit to defendant's enumeration number 11 on either ground.

9. Defendant's final enumeration (No. 12) attacks the admission into evidence of oral statements made by him to an F.B.I. agent on two grounds: (1) No copy of the agent's interview notes were furnished to defendant on his motion for discovery; and (2) defendant was not given the Miranda warnings.

We have heretofore in this opinion dealt with the subject of discovery. We further note the district attorney asserts in his brief that "The record does disclose that a memorandum of the statement was given to the appellant before the trial." (Brief, p. 29).

At the request of counsel for appellant the trial court held a Jackson v. Denno hearing outside the presence of the jury before the agent's testimony was admitted. This disclosed the statements to have been made by the appellant at a time when he was not a suspect. It also appears the interview was non-custodial. See United States v. Montos, 421 F2d 215.

It should also be noted in Miranda v. Arizona, 384 U. S. 436, 477 (86 SC 1602, 16 LE2d 694) the United States Supreme Court said that "Our decision is not intended to hamper the traditional function of police officers in investigating crime. . . Such investigation may include inquiry of persons not under restraint. General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information

they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." Furthermore the court stated on page 478 that "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

As was the result of our consideration of the previous eleven assignments, we again find the trial court did not err in admitting this testimony.

*Judgment affirmed. Bell, C. J., and Quillian, J., concur.*

ARGUED MAY 6, 1974 — DECIDED JULY 2, 1974 — REHEARING DENIED JULY 23, 1974 — ▮▮▮▮▮▮▮▮▮

*Joe Salem,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, William M. Weller, Morris H. Rosenberg,* for appellee.