## 50313. COOK v. THE STATE.

CLARK, Judge.

Via immediate review certificate, defendant has appealed from the denial of his motion to suppress. This motion is aimed at a coin collection which was in defendant's possession during his efforts to make a sale to a coin collector when seized by police. Both the seizure and arrest were based upon a report made to the authorities by a well-meaning citizen whose suspicions were aroused by his observations. The seizure and accompanying arrest were made without warrants and without knowledge at that time that the collection had been stolen from an Alabama numismatist. Following a detainer at headquarters until an inventory of the seized currency could be completed, defendant and the other individual were released. After the next day's teletype inquiry developed the information as to the collection having been purloined, defendant was again taken into custody and subsequently indicted for receiving stolen property.

The facts adduced upon the suppression hearing are as follows: Upon entering his Rome business establishment Sproull Dempsey observed defendant removing a suitcase from the trunk of an automobile

parked near the rear entrance of his office building. Shortly thereafter, Dempsey had occasion to enter another office in that building and noticed that defendant, another man, and Dempsey's brother, Dwyatt, were in apparent discussion. At that time, the suitcase which Sproull had previously observed was open and a coin collection revealed therein. Upon inquiring, Sproull was informed the collection belonged to defendant. Sproull then left to fulfill a business engagement. On his return, Sproull again encountered the trio behind the locked door of the sales office. On this third occasion, Sproull became "excited" because "the money was spread out all over the table, and in the floor." (T. 6). Although his question as to ownership of the money was again affirmatively answered by defendant, stating that it was not "hot" or stolen (T. 6, 11, 12), Sproull's anxiety was not alleviated. "I thought it was something the officers should look into, and I went to police headquarters," which was next door across a lane. There he told police that a "gentleman had a large amount of money" in his office; and that he (Sproull) was " 'suspicious' and wanted the police to investigate." (T. 15). Two policemen, Officer Williams and Detective Smith, accompanied Sproull to the latter's business premises. At this point the evidence becomes somewhat in conflict.

Dwyatt Dempsey testified defendant had previously known of his being a coin collector and had called him for an appointment. After defendant and the other man had displayed the collection and he had declined to buy, he and defendant had walked down a hallway toward the rear entrance of the building while the other person remained behind. He further stated that Sproull and the police came through the back door whereupon they went into the sales office; that the other person went into an adjoining office and closed the door; that the coins had been replaced in containers and could not be seen; that the police asked to see the coins; that either the police or defendant had then opened the containers, but that he (Dwyatt) could not remember by whom they were opened.

Detective Smith testified that upon entering the building Dwyatt Dempsey stood about four feet in front of him while defendant and his companion appeared

approximately 25 feet down the hallway; that these latter two then entered the sales office and closed the door; that Sproull knocked on the door and defendant opened it; that as he entered the sales office he saw the other man go into an adjacent room and close the door; that upon asking this individual to join him, this was done; that the coin collection was in plain view when he entered the office; that he asked who owned the coins but received no immediate reply; that finally defendant said the coins belonged to a friend; and that he then escorted defendant, the other man, and the coins to the station house.

Officer Williams also testified that the coins were in plain view and that upon asking to whom the coins belonged no immediate response was forthcoming. He added that an examination revealed "some of the writing on the rolled pennies . . . had been rubbed out with a red or black marking pencil" and this brought "a little more suspicion" that something was amiss. (T. 49). *Held:*

1. We first note that, contrary to defendant's contention, defendant cannot complain of the presence of the police on the Dempsey premises. Since the Fourth Amendment protects persons, not places, Katz v. United States, 389 U. S. 347 (88 SC 507, 19 LE2d 576), defendant is in no position to object to Dempsey's invocation of police assistance. *Chaney v. State,* 133 Ga. App. 913, 915 (1) (213 SE2d 68); *Braddock v. State,* 127 Ga. App. 513 (194 SE2d 317). "The immunity from unreasonable searches and seizures being personal, one cannot object to the searching of another's premises or property if the latter consents to the search, even though property is found, for the possession of which defendant is subsequently prosecuted." Annot., 31 ALR2d 1079, 1081 (1953). And see Gordon v. State, 160 S2d 73 (Miss. 1964) in which a search warrant was deemed unnecessary where a homeowner beckoned officers and informed them of defendant's presence in his house.

2. Of course, this is not to say that defendant has no standing to challenge the seizure of the coins.[1] Charged

[1]"Standing" on account of an interest in the property searched and "standing" on account of an interest in the property seized are distinct and separate issues.

with an offense the essential element of which is possession, defendant has automatic standing in this regard. Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697); *Wood v. State,* 224 Ga. 121 (160 SE2d 368); *Braddock v. State,* supra. See generally Palmer v. State, 14 Md. App. 159 (286 A2d 572) n. 10.

3. We also observe that the evidence sufficiently supports the conclusion that the collection was in plain view when the officers entered the sales office. Thus the trial judge, as the motion to suppress fact-finder, was authorized to resolve the conflict in the testimony and determine that the collection was in fact in plain view. Code Ann. § 27-313 (b); *Harris v. State,* 120 Ga. App. 359 (1) (170 SE2d 743).

A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be. Ker v. California, 374 U. S. 23 (83 SC 1623, 10 LE2d 726); Harris v. United States, 390 U. S. 234 (88 SC 992, 19 LE2d 1067); *Green v. State,* 127 Ga. App. 713, 715 (194 SE2d 678). And where such a plain view seizure takes place there is in effect no search at all. Grimes v. United States, 405 F2d 477 (5th Cir. 1968); *Lewis v. State,* 126 Ga. App. 123 (190 SE2d 123).

4. But it must be *immediately apparent* to the investigating officer that the property to be seized is contraband. " 'The "plain view" doctrine is applicable only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.' Coolidge v. New Hampshire, 403 U. S. 443 (91 SC 2022, 29 LE2d 564)." *Mobley v. State,* 130 Ga. App. 80, 83 (202 SE2d 465).

5. Therefore, the question for decision in the case at bar is whether it was immediately apparent to the police that the coin collection was stolen property. Our conclusion is that it was not what might be called "an implicating incriminating item." See *Zimmerman v. State,* 131 Ga. App. 793 (207 SE2d 220); *Mobley v. State,* supra.

Nor do we think that, under the totality of the

circumstances, the police had probable cause to believe that a crime was being committed in their presence. See in this connection *Anderson v. State,* 123 Ga. App. 57 (179 SE2d 286). While the circumstances were such as to lead the officers to have a bare suspicion of criminal conduct, they were not sufficient to justify the seizure of the coins and the consequential arrest of defendant. " 'Probable cause means . . . reasonable grounds, and is that apparent state of facts which seems to exist after reasonable and proper inquiry. [Cits.].' *Wood v. State,* 126 Ga. App. 423, 424 (190 SE2d 828). Rumor, suspicion, speculation or conjecture is not sufficient." *Kelly v. State,* 129 Ga. App. 131, 132 (198 SE2d 910). And, of course, the mere fact that the police subsequently discovered the coins had been stolen is immaterial. Probable cause cannot be measured by hindsight. *Johnson v. State,* 111 Ga. App. 298 (141 SE2d 574). See *Stanley v. State,* 129 Ga. App. 759 (201 SE2d 182).

The case of *Brooks v. State,* 129 Ga. App. 393 (199 SE2d 578) does not require a contrary ruling in this appeal. There this court ruled the seizure of a bag of coins (which were in plain sight and were subsequently determined to be stolen) was proper since appellant's *lawful* arrest (for possession of marijuana) already had been effected. Here defendant's arrest was an incident of the unlawful seizure.

6. "Under a warrantless search and seizure the burden of proving that the search and seizure were lawful is upon the state. [Cits.]." *Merritt v. State,* 133 Ga. App. 956, 957 (1) (213 SE2d 84). The evidence here failed to meet that statutory standard. Accordingly, the court erred in failing to grant defendant's motion to suppress.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*

SUBMITTED MARCH 10, 1975 — DECIDED MAY 6, 1975.

*Bobby Lee Cook, Jr.,* for appellant.

*F. Larry Salmon, District Attorney, Robert D. Engelhart, Assistant District Attorney,* for appellee.