A90A1897. DANIEL v. THE STATE.
(404 SE2d 466)

POPE, Judge.

Defendant Juanza D. Daniel entered a guilty plea to the offense of possession of a firearm by a convicted felon but reserved his right to appeal from the denial of his motion to suppress. We affirm.

The transcript from the motion to suppress hearing shows the following: Deputy Mike Huntzinger of the Clarke County Police Department stopped defendant for travelling at an excessive rate of speed. He requested defendant's driver's license and proof of insurance. Defendant told the officer his license had expired or been suspended but retrieved his proof of insurance from inside his car. After a computer check revealed that defendant's license had been suspended for points, Huntzinger placed defendant under arrest for driving with a suspended license, handcuffed him and placed him in the back of his patrol car. Huntzinger then searched defendant's vehicle and discovered a .38 caliber revolver "stuffed down" between the front seat and the console. The officer testified that the search was conducted incident to defendant's arrest, and not for the purpose of inventorying the contents of the automobile (which was impounded) or for the purpose of discovering evidence of the crime for which defendant had been placed under arrest (driving with a suspended license).

Relying on *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981), the trial court denied defendant's motion to suppress. On appeal defendant argues that, pretermitting the validity of the search under federal law, the search was illegal under state law because it was not authorized by OCGA § 17-5-1.[1]

---

[1] OCGA § 17-5-1 (a) allows a search incident to a lawful arrest for the following pu

"In *New York v. Belton,* [supra] the United States Supreme Court held that 'when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.' Id. at 460. 'In (*State v. Hopkins,* 163 Ga. App. 141 (293 SE2d 529) (1982), this court found that the teaching of *Belton* was "that a search of the passenger compartment of an automobile recently occupied by an arrestee is a valid search incident to an arrest, even if the arrestee had no 'immediate control' of the area at the time the search was conducted. The decisive factor is whether the arrestee was, at the time of his *arrest,* a 'recent occupant' of the automobile, not whether the automobile and its contents were in his immediate control at the time of the *search. . . .*"'" *State v. Tinsley,* 194 Ga. App. 350, 351 (1) (390 SE2d 289), cert. denied, 194 Ga. App. 912 (1990).

In *Tinsley* the challenged search, like the search in this case, occurred after defendant had been arrested for a traffic violation (driving without a license) and placed in the back of the squad car. In upholding the search in *Tinsley,* this court, although not specifically addressing the applicability of OCGA § 17-5-1, noted that while the search might not be upheld on the pretext of discovering fruits or instrumentalities of the crime for which the defendant was arrested, OCGA § 17-5-1 (a) (3), since in the case of traffic violations there are no fruits or instrumentalities to be discovered, "a search of . . . the area within such person's immediate presence may be conducted for other purposes [enumerated in OCGA § 17-5-1], such as protecting the officer from attack [or preventing the arrestee from escaping]. OCGA § 17-5-1 (a) (1) [& (2)]." Id. at 352. See also *Medlin v. State,* 168 Ga. App. 551 (2) (309 SE2d 639) (1983) in which this court, relying on *Belton,* rejected defendant's claim that the search "of his vehicle [was] not justified as [a search] incident to a lawful arrest *under OCGA § 17-5-1.*" (Emphasis supplied.) Id. at 552.

We also reject defendant's implicit contention that the arresting officer make two inquiries, one under state and one under federal law, before determining whether to proceed with the contemporaneous search of an automobile following the arrest of its occupant. Such a procedure would, in effect, completely frustrate the stated purpose of the Supreme Court "to establish . . . a single familiar standard [for the category of cases where the arrestee is a recent occupant of the car but no longer has access to it or its contents] to guide police officers, who have only limited time and expertise to reflect on and bal-

---

oses: "(1) Protecting the officer from attack; (2) Preventing the person from escaping; (3) Discovering or seizing the fruits of the crime for which the person has been arrested; or (4) Discovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested."

ance the social and individual interests involved in the specific circumstances they may confront. (Cit.) New York v. Belton, 453 U. S. at 458, supra." *State v. Hopkins,* 163 Ga. App. 141, 144 (293 SE2d 529) (1982). In so holding we find instructive the holding in *Durden v. State,* 250 Ga. 325, 327 (1) (297 SE2d 237) (1982), in which our Supreme Court was confronted with a similar issue involving probable cause to arrest under federal and state law. In that case the court recognized that "dual inquiries, one under federal law and one under state law, serve no useful purpose and result in complicating the law in an area which needs to be readily understood by law enforcement officers." Id. at 327. Thus, for purposes of searching a vehicle contemporaneously with the lawful arrest of an individual, "we find the state rule to be the same as the federal rule. [Such a search], legal under federal law, [is] legal under state law. Thus, defendant's motion to suppress the evidence was properly denied." Id.

*Judgment affirmed. Andrews, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

1. It should be noted that the analysis undertaken in this case and in the cases cited did not examine the reaches of the Georgia Constitution. It may not be coextensive with the Georgia statute or with the Federal Constitution's provision regarding search and seizure as construed by the United States Supreme Court from time to time.

The motion to suppress asserted that the weapon was obtained "in violation of the accused's rights under Article 1, Sec 1, Para. 13 of the Georgia Constitution [1983] and the Fourth and Fourteenth Amendments of the U.S. Constitution." However, at the hearing, the defendant stood on the limitations of the statute authorizing search pursuant to lawful arrest in certain circumstances, OCGA § 17-5-1, and on the Federal Constitution and recent Georgia cases applying federal constitutional principles, especially as articulated in *New York v. Belton,* 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981). The Georgia Bill of Rights provision was not pursued. The trial court decided the motion on the federal ground without any express ruling on the state statutory ground.

On appeal defendant argues that the Georgia statute is more restrictive than is the Fourth Amendment, as construed by the United States Supreme Court particularly in *Belton,* and that the motion should have been granted on this state-law-based ground. He cites *State v. Camp,* 175 Ga. App. 591, 593 (1) (333 SE2d 896) (1985), which acknowledged that state statute and Federal Constitution may set different standards. Although it also pointed out that state constitutional guarantees are not necessarily the same as the federal, that independent ground was abandoned in this case as well as in *Camp.*

I do not suggest that the thirteenth paragraph of the Constitution of Georgia is more or less restrictive of police or more or less protective of citizens than is the Fourth Amendment to the United States Constitution. Cf. *Oswell v. State*, 181 Ga. App. 35 (351 SE2d 221) (1986). I suggest only that it was not explored as a basis for the motion, and thus we do not consider it.

2. Insofar as *State v. Tinsley*, 194 Ga. App. 350 (390 SE2d 289) (1) (1990), addresses the federal constitutional claim, it is not relevant to the issue before us. A federal claim is not raised. Whether the search violated the state statute is the question. *Tinsley* rejects *Mobley v. State*, 130 Ga. App. 80 (1) (202 SE2d 465) (1973)[1] and *Rowland v. State*, 117 Ga. App. 577 (161 SE2d 422) (1968), as controlling on the state statute issue. It construes the state statute in light of the federal construction of the Federal Constitution in *Belton* and implicitly finds no violation of the statute.

Another case cited by the majority, *Medlin v. State*, 168 Ga. App. 551 (2) (309 SE2d 639) (1983), does the same thing. In determining that OCGA § 17-5-1 was not violated, the court measured the search by the federal standard of *Belton*.

I do not discern in appellant's brief, or in his argument in the lower court for that matter, any contention or suggestion that the arresting officer make two inquiries or attempt to apply two separate standards before searching. Appellant merely urges, correctly, that the officer must abide by whatever is the most restrictive law applicable to his activities. If the state statute or the State Constitution is more demanding than the Federal Constitution, then he is bound by the former and need not be concerned with the latter because it is automatically subsumed. The thrust of appellant's argument is that even if *Belton*, that is, the United States Supreme Court interpretation of the Fourth Amendment in automobile searches, is satisfied, Georgia law must also be satisfied. The Supreme Court in *Belton* did not establish a "single standard" for both state and federal law, but rather a single federal constitutional standard which is applicable in all states insofar as the Federal Constitution is concerned. The "disarray" it sought to resolve was federal constitutional disarray which had emerged from court decisions around the country. It did not, and does not, and cannot, prohibit state laws, by state legislative enactments or state common law development, from protecting individual rights more stringently. That is the nature of federalism. The policeman need only learn and apply one standard, the highest standard compelled by our dual system of laws.

---

[1] Overruled on other grounds sub nom. *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977).

184

Since our Court has concluded that compliance with *Belton* principles meets the strictures of OCGA § 17-5-1, I am constrained to concur in the affirmance of the denial of appellant's motion to suppress the evidence seized in the search. The Supreme Court of Georgia, in *Durden v. State,* 250 Ga. 325, 327 (1) (297 SE2d 237) (1982), without analyzing the strictures of OCGA § 17-5-1,[2] and dwelling briefly only on the arrest statute and finding it "to be the same as the federal rule," summarily held that "[a]n arrest and search, legal under federal law, are legal under state law."

DECIDED MARCH 15, 1991.

*Kenneth W. Mauldin,* for appellant.
*Harry N. Gordon, District Attorney, James B. McClung, Assistant District Attorney,* for appellee.

---

[2] It is not evident whether the appellant invoked OCGA § 17-5-1 expressly.