## 29313. BRISBANE et al. v. THE STATE.

INGRAM, Justice.

Appellants, Larry Brisbane and Marvin Jackson, were convicted after a jury trial in the Superior Court of Chatham County on two counts of armed robbery for which each of them received a sentence of 20 years imprisonment. This appeal, from the overruling by the trial court of their amended motion for new trial, presents only two questions for decision by this court. The initial question is whether appellants were subjected to an

illegal arrest when a police officer stopped the automobile in which appellants were riding and then detained them. The other question, corollary to the first, is whether the subsequent search of the vehicle was permissible under the Constitutions of the United States (Code § 1-804) and the State of Georgia (Code Ann. § 2-116).

The pertinent facts of the case bearing upon the issues involved in this appeal are as follows: In the early morning hours of September 11, 1972, Logan's Gulf Station in Savannah was robbed at gunpoint by three men. Later that morning, at approximately 3:45 a.m., Officer G. T. Hill, of the Chatham County Police Department, was on routine patrol on U. S. Highway 17 south, parked in his patrol car near a Thorni's service station which was known to him to have been the scene of numerous armed robberies. Officer Hill testified that while parked in his patrol car he noticed an automobile twice drive by the Thorni's service station. When the automobile drove by the second time and again slowed down in front of the service station, Officer Hill decided to stop the vehicle. After stopping the automobile, Officer Hill requested the driver to produce his driver's license and car registration. The driver, however, was unable to produce either a driver's license or a vehicle registration but did produce a Navy I.D. card. At that point, Officer Hill escorted the driver, James Brewton, to the patrol car and made a radio report to the police station seeking information concerning the ownership of the car based upon its tag number. In a few minutes, Officer Hill was notified by the police station that the car had been reported as stolen. At this time, Officer Hill placed all the occupants of the car, including appellants, under arrest for suspicion of auto theft.

A personal pat-down search was conducted of each person in the automobile and twelve one-dollar bills and four silver certificates were found on the person of Larry Brisbane. These items were later identified as having been stolen in the armed robbery. Officer Hill and another police officer then began a search of the car. Officer Hill testified that lying on the front seat of the car in plain view was a plastic container containing several pictures which were later discovered to be from the wallet of the

station attendant at Logan's Gulf Station. Officer Hill also testified that lying on the back floor, in plain view, were several shotgun shells. Finally, Officer Hill, by using a screwdriver, gained entrance to the trunk of the car (the lock had previously been removed) and therein discovered two sawed-off shotguns. The shotguns were subsequently identified at the trial of appellants as the weapons used in the armed robbery.

Appellants urge that when Officer Hill stopped the automobile in which they were riding, "to see what they were up to" that he effectively seized them in violation of their right of privacy and security. Appellants argue there were no exigent circumstances or articulable suspicions to be inferred from either their conduct or the conduct of any other person in the automobile, and therefore no probable cause existed for Officer Hill to stop the vehicle and detain them. Appellants reason that the initial stopping of the automobile by Officer Hill violated their Fourth Amendment rights in that they were "seized" illegally.

The Supreme Court of the United States has held that when a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person within the meaning of the Fourth Amendment. Terry v. Ohio, 392 U. S. 1, 16 (88 SC 1868, 20 LE2d 889) (1968). To justify a warrantless intrusion of this nature, the state must be able to point to specific and articulable facts, which, together with rational inferences drawn therefrom, reasonably warrant the intrusion. Terry v. Ohio, supra; Adams v. Williams, 407 U. S. 143, 146 (92 SC 1921, 32 LE2d 612) (1972); United States v. Zubia-Sanchez, 448 F2d 1232, 1233 (9th Cir. 1971); Tanner v. State, 114 Ga. App. 35 (150 SE2d 189) (1966). See also, Note, Nonarrest Automobile Stops: Unconstitutional Seizures of the Person, 25 Stanford L. Rev. 865, 870 (and cases cited therein at n. 31) (1973).

What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing. Wilson v. Porter, 361 F2d 412, 415 (9th Cir. 1966). "Where no circumstances at all appear which might give rise to an articulable suspicion

(less than probable cause, but greater than mere caprice) that the law has been violated, the act of following and detaining a vehicle and its occupants must be judged as an impermissible intrusion on the rights of the citizen." *Brooks v. State,* 129 Ga. App. 109, 111 (198 SE2d 892) (1973).

What is implicit in the above is that each case must turn on its own independent circumstances bearing on the issue of reasonableness of the seizure. Appellants argue that no exigent circumstances or articulable suspicions could be inferred from the conduct of appellants or other persons in the automobile. They rely on *Brooks,* supra, as supportive of this suppression argument. In *Brooks,* a seizure and subsequent search were held illegal because they were premised upon a mere hunch, or inclination. In that case, police officers observed Brooks and a female companion traveling along a highway. When the vehicle turned off the highway onto a side road leading into the woods, the officers followed a short distance and then signaled them to pull over. The court, in suppressing contraband found in plain view as a result of the illegal seizure, stated that the officers were not dealing with any real or supposed authority to check for traffic violations, or with even the slightest articulable suspicions arising from inferences from conduct, or from knowledge arising out of the totality of the circumstances. The court cited an article by Professor Charles A. Reich, Police Questioning of Law Abiding Citizens, 75 Yale L. J. 1161 (1966), which stated that one may legitimately be in a particular place on no business whatsoever, perhaps merely to be alone or to watch the moon, and he has the right to do so without harassment.

Analyzing the facts of the present case in the light of these authorities, we find no evidence of arbitrary harassment or absence of the kind of suspicious conduct that justifies an investigative inquiry. The officer observed the vehicle in which appellants were riding drive slowly by an all-night service station which had been the scene of several recent armed robberies. After passing the service station once, the vehicle was observed a second time driving by the station, and slowing down in front of the station as it had done previously. The time was

approximately 3:45 a.m. We are of the opinion that Officer Hill acted reasonably under the totality of the circumstances confronting him and that the activity of the automobile in which appellants were riding created a justifiable suspicion of their conduct so as to warrant the limited investigative detention.

It is clear that in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh the momentary inconvenience and indignity of investigatory detention. In this case, Officer Hill limited his seizure to the purpose of asking for the driver's license and automobile registration. In a very similar situation, it was held that an officer was justified in stopping a vehicle which had emerged from a shopping mall which had been closed for some time and requesting identification. *Anderson v. State,* 123 Ga. App. 57 (179 SE2d 286) (1970). In *Tanner v. State,* supra, a car was observed passing back and forth behind closed businesses at 3:40 a.m. The car was stopped and a driver's license check was made, at which time the officer observed burglary tools in plain view and arrested the driver. The limited investigation in each of these cases was held to be justified under these facts.

This court has held that "the state can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness." *State v. Swift,* 232 Ga. 535 (207 SE2d 459) (1974). Code Ann. § 92A-9906 makes it a criminal offense for a driver to refuse to exhibit his license to a police officer upon request. Of course, the license checks contemplated by this statute should not be used as a subterfuge to detain citizens for the purpose of searching their automobiles when they are under no founded suspicion. However, the facts and circumstances brought to the attention of the officer in this case authorized the investigative action which was taken. Upon asking the driver of the vehicle for his license and registration and learning that he had neither license nor automobile registration, the officer was authorized to detain the vehicle and its occupants while he communicated with the station about the ownership of the automobile. We

conclude that this limited investigative inquiry was fully authorized under the facts of this case. Cf. Schulz v. Lamb, 16 Crim. L. Rep. 2145 (decided October 15, 1974, 9th Cir.).

Appellants also urge that, even if they were legally stopped the subsequent search of the car and trunk was unreasonable and illegal and that this illegal search "tainted" any discovered evidence and required its suppression in the trial court. Wong Sun v. United States, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963). Appellants assert they have standing to complain of the vehicle search under the rationale set forth in Jones v. United States, 362 U. S. 257 (80 SC 725, 4 LE2d 697, 78 ALR2d 233) (1960), which held that anyone legitimately on the premises may object to a search affecting him. It is clear that under Jones, a party may assert standing to challenge the search of a vehicle either by showing a possessory interest in the car search or by property taken or by claiming automatic standing if charged with an offense the essential element of which is possession. See, Gutterman, A Person Aggrieved: Standing to Suppress Illegally Seized Evidence in Transition, 23 Emory L. J. 111, 128 (1974). Professor Gutterman points out that, contrary to some authority,[1] the courts following the Jones rationale have reason that "one in unlawful possession of a stolen vehicle should be in no better position to assert a claim of invasion to his privacy with respect to the search of the vehicle than would be a trespasser on real property. These decisions are also in accord with the position that mere unlawful possession does not alone warrant 'a reasonable expectation of freedom from governmental intrusion' sufficient to assert a legitimate fourth amendment interest in the vehicle which is searched. In fact, a person who knowingly drives a stolen vehicle on a public highway probably is in constant expectation of intrusion." Id., p. 129. See, Kaufman v. United States, 323 FSupp. 623 (E. D. Mo. 1971); Meade v. Cox, 310 FSupp. 233 (W. D. Va. 1970); Williams v. United States, 323 F2d 90 (10th Cir. 1963).

---

[1]E.g., see Williams v. United States, 412 F2d 729 (5th Cir. 1969), holding that the rule of automatic

It is clear that appellants were not legitimately on the premises (in a stolen car) nor were they the victims of an invasion of their property (the car). Having no expectation of privacy or freedom from governmental intrusion while in the stolen car, the appellants have no basis to assert standing based upon a claim of ownership or possession of property seized from a stolen vehicle in which it has been unlawfully secreted. See, Gutterman, A Person Aggrieved, supra, p. 129. It was incumbent upon appellants to show some legitimate possessory interest in the premises (or car), in order to complain of the search. This could have been done simply by showing that they had the owner's permission to use the vehicle. Jones v. United States, supra; Draper v. Maryland, 265 FSupp. 718 (D. Md. 1967). However, as even this was not shown, we must apply the rule that where a warrantless search of an automobile was made, which was not the property of the accused, and where the accused does not show that he was driving the same with permission of the owner or with permission of anyone entitled to possession of the automobile, the accused has no standing to invoke constitutional guarantees to exclude evidence found in the search. *Dutton v. State*, 228 Ga. 850 (1) (188 SE2d 794) (1972).

We hold that appellants have no standing to object to the vehicle search made in this case. Since the evidence discovered in the search was properly admitted by the trial court and the evidence is otherwise sufficient for conviction, the judgment of the trial court adverse to the appellants must be affirmed.

*Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 16, 1974 — DECIDED DECEMBER 3, 1974.

*Friedman, Haslam & Weiner, Ronald E. Ginsberg,* for appellants.

---

standing of Jones applies to grant the thief standing. It may be noted, however, that this seems contrary to the carved out exception in Jones that the person must be "legitimately on the premises" (i.e., not a trespasser).

*Andrew J. Ryan, Jr., District Attorney, Michael K. Gardner, Andrew J. Ryan, III, Assistant District Attorneys, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Deputy Assistant Attorney General,* for appellee.