### 60138. JONES v. THE STATE.

McMURRAY, Presiding Judge.

By accusation defendant was charged with the offense of a misdemeanor: violation of the Georgia Controlled Substances Act, in that he did unlawfully possess and have under his custody and control less than one ounce of marijuana. Defendant moved to suppress "the alleged contraband" seized by a police officer in the search of an automobile without probable cause and without defendant's consent. After a hearing, the motion was denied by the trial court upon its determination that "under the totality of the circumstances . . . reasonable grounds existed for an articulable suspicion sufficient to warrant a limited investigative detention of the vehicle in question and its occupants," citing *Stiggers v. State,* 151 Ga. App. 546, 547 (1) (260 SE2d 413); *State v. Carter,* 240 Ga. 518 (242 SE2d 28); *Allen v. State,* 140 Ga. App. 828, 829-831 (1) (232 SE2d 250); and *State v. Purdy,* 147 Ga. App. 340, 341 (248 SE2d 683). This court granted an interlocutory appeal in order to review the trial court's denial of the defendant's motion to suppress. *Held:*

This case involves the issue of whether the police may make an investigatory stop of a vehicle on a street in an area having no other outlets where there had been problems of vandalism in the past. The area was a new subdivision just being constructed, and there had been reports of various problems in the new subdivisions throughout the county. As the officer approached the subdivision on its main road from its entrance he observed an automobile coming toward him which had just turned on its lights. He immediately directed the vehicle to stop and approached the car. As the defendant rolled down the window of the automobile in which he was riding, the officer immediately smelled what he thought was marijuana and observed paraphernalia used in smoking marijuana, in the vehicle in plain view as well as a passenger in the front seat discarding a bag containing a leafy substance "that smelled and looked like marijuana" on the ground from the passenger door. Also passengers

were two juveniles, a male and a female.

Under the recent case of *State v. Carter*, 240 Ga. 518, supra, reversing *Carter v. State*, 143 Ga. App. 166 (237 SE2d 656), the evidence was ample for the police officer to stop the vehicle to ascertain the purpose of the occupants being in the uncompleted subdivision and to determine what their actions had been while they were there. Immediately thereafter the plain view doctrine came into effect with the smelling of the odor of marijuana and observing the various paraphernalia in the automobile. The trial court did not err in denying the motion to suppress the evidence seized.

*Judgment affirmed. Deen, C. J., Quillian, P. J., Banke and Birdsong, JJ., concur. Smith, Shulman, Carley and Sognier, JJ., dissent.*

SUBMITTED JULY 1, 1980 — DECIDED DECEMBER 5, 1980 —

*Richard E. Collar, Jr.,* for appellant.
*Herbert T. Jenkins, Jr., Solicitor,* for appellee.

SMITH, Judge, dissenting.

In the watershed decision of Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), the United States Supreme Court held that a limited "seizure" of an individual is constitutionally permissible where the police have "specific and articulable facts" giving rise to a "reasonable suspicion" of criminal activity. Today, in apparent disregard of these constitutional requirements, a majority of the Court of Appeals of Georgia upholds a wholly unwarranted "seizure" of an individual in his automobile. To this inexplicable aberration from basic principles of constitutional law, I respectfully dissent.

1. The facts of this case are not in dispute. On the evening of December 21, 1979, Officer Henning of the Gwinnett County Police Department was on a routine patrol which included a "subdivision just being constructed" called New Castle. The roads of the subdivision had been paved, but only one house was then under construction. There had been reports of various problems in the new subdivisions throughout the county. As to the subdivision in question, the officer testified: "[W]e have had a problem down there with persons riding vehicles across the grass, tearing it up, with a lot of garbage being dumped out, and abandoned down there, and a lot of beer and drinking and bottles thrown down in there, and glass in the roadway." Although Officer Henning testified that he had made approximately ten stops in the subdivision over the past two months,

*there is nothing in the record establishing when the most recent acts of vandalism had occurred.[1] There were no reports of any unlawful or suspicious conduct on the evening of December 21.*

At approximately 9:30 p.m., Officer Henning turned into New Castle from the main road for what he termed a "preventative patrol." The subdivision had no other outlets. It appeared to Officer Henning that a vehicle coming up a hill toward the main road had just turned on its headlights. When the oncoming vehicle approached the crest of the hill, Officer Henning directed the vehicle to stop and approached the car. Appellant, who was with three companions, rolled down his window. The officer smelled what he thought was marijuana. The automobile was then searched and marijuana was found.

*At the time of the stop, the officer had observed no illegal activity. Nor was there any indication of such activity.* For instance, no mud was observed on the tires of appellant's vehicle. The automobile made no erratic movements. The occupants of the vehicle exhibited no unusual behavior. Officer Henning stated he had no reason to think the occupants of the vehicle might be the possible perpetrators of any crime "except for the fact that they were in the subdivision." He testified: "[A]ny vehicle in there at that time of night I have reason to suspect . . ."

Officer Henning apparently believed any vehicle driving into the subdivision at night was subject to being stopped. Indeed, while appellant was under arrest, at least one other car entered the subdivision; it, too, was stopped by Officer Henning. The officer testified as follows: "This other car came in. I got out, talked to them. It was a white male and a female. I guess they were in their late thirties or early forties. He said he was a real estate salesman, and he was just looking around the lots down there. I told him, you know, that would be okay, if that was what he was doing."

2. "The flaw in the State's case is that none of the circumstances

---

[1] On the basis of the evidence in the record, the acts of vandalism which aroused the suspicion of the police could have occurred a day, a week, a month or even two months before the evening of December 21. In the absence of any evidence as to when the acts of vandalism had occurred, it would seem questionable whether the trier of fact could make a determination that such acts gave rise to a "reasonable suspicion" that appellant had been engaged in criminal activity on the evening in question. Nevertheless, the majority cites these acts of vandalism in support of its conclusion that "the evidence was ample for the police officer to stop the vehicle to ascertain the purpose of the occupants being in the uncompleted subdivision and to determine what their actions had been while they were there."

preceding the officer['s] detention of appellant justified a reasonable suspicion that he was involved in criminal conduct." Brown v. Texas, 443 U. S. 47, 51-52 (99 SC 2637, 61 LE2d 357) (1979). Officer Henning's testimony establishes that his decision to stop appellant was based solely upon 1) the time and 2) the location.[2] Contrary to the position adopted by Officer Henning and a majority of this court, anyone entering the New Castle subdivision after sundown was not ipso facto subject to detention by the police. Merely because a crime had been committed on some previous occasion "does not transform a . . . neighborhood into a no man's land in which any passerby is fair game for a roving police interrogation." In re Tony C., 148 Cal. Rptr. 366, 371 (582 P2d 957) (1978). The fact that appellant was in the subdivision at 9:30 p.m. does not, under the circumstances of this case, substantially aid the state's position. See Scott v. State, 549 SW2d 170 (Tex. Crim. App. 1976); Vollmer v. State, 337 S2d 1024 (Fla. App. 1976). Appellant was driving on a public road. The hour was not late; the area was not untraveled at this time of night. Compare *Allen v. State,* 140 Ga. App. 828 (232 SE2d 250) (1976);[3] Orricer v. Erickson, 471 F2d 1204 (8th Cir. 1973).

*State v. Carter,* 240 Ga. 518 (242 SE2d 28) (1978), which the majority considers controlling, is readily distinguishable on its facts. In *Carter,* the accused "was *driving out* of the *rear parking lot* of the Camp Creek Elementary School at 1:30 a.m. . . ." The arresting officer "had heard a police radio alert earlier concerning a similar colored van occupied by two men which was seen cruising a nearby subdivision and acting suspiciously." In this case, appellant was driving on a *public road* at *9:30 p.m.* There were no reports of any suspicious activity that evening.

The state also relies on *State v. Purdy,* 147 Ga. App. 340, 342 (248 SE2d 683) (1978). The majority does not cite this authority and it is clearly inapplicable to the instant case. In *Purdy,* the accused and his passenger "were making some movements on the back seat as if to cover up something which were such as to give the officer articulable grounds for suspicion . . ." See also *Brisbane v. State,* 233 Ga. 339 (211

---

[2] The state argues an additional consideration is the fact that "the officer suddenly observed lights come on on a moving vehicle in an attempt to leave the sub-division." However, Officer Henning's testimony establishes that his decision to stop the vehicle was unrelated to any "sudden" observation of light.

[3] The writer does not necessarily agree with the reasoning or the result reached in the Georgia cases cited in this opinion. See, e.g., *Allen v. State,* supra (Smith, J., dissenting). Nonetheless, it is important to recognize the factual dissimilarities between some of these cases and the case at bar.

SE2d 294) (1974). In the instant case, there is no evidence of suspicious conduct on the part of appellant or his companions.

On the basis of the evidence in the record, any suspicion that appellant was involved in criminal conduct was manifestly unreasonable. Accordingly, "the balance between the public interest and appellant's right to personal security and privacy tilts in favor of freedom from police interference." Brown v. Texas, supra at 52; see also *Brooks v. State,* 129 Ga. App. 109 (198 SE2d 892) (1973). The motion to suppress should have been granted.

I am authorized to state that Judge Shulman, Judge Carley and Judge Sognier join in this dissent.

SHULMAN, Judge, dissenting.

While I have no desire to hamper our law enforcement agencies in the performance of duties already made difficult by restrictive judicial decisions, I am unalterably opposed to extensions of the police power which tend to override the constitutionally protected rights of the individual. It is my opinion that the action of the police officer in this case constitutes just such an impermissible extension of the police power.

Considering the totality of the circumstances surrounding this questionable stop, I cannot agree that at the time of the stop the police officer possessed specific and articulable *facts* giving rise to a *reasonable* suspicion of criminal activity. The fact that appellant was in possession of contraband must not obscure the ultimate issue: the degree to which public authority may infringe on the freedom of the public to come and go, secure against governmental intrusion. In my opinion, the intrusion in the instant case was not reasonable.

For the reasons stated, I would reverse the trial court's denial of the motion to suppress.