74148. THE STATE v. HODGES et al.
(360 SE2d 903)

</div>

BEASLEY, Judge.

The trial court granted appellees' motion to suppress evidence, in a proceeding pursuant to OCGA § 17-5-30, after concluding that the investigative stop of appellees was not supported by an articulable suspicion, in violation of the Fourth Amendment. The state appealed. Although Hodges ostensibly relied below on both federal and state constitutional provisions, only the federal ground is involved here.

The search and seizure did not cross Fourth Amendment federal constitutional bounds. The evidence shows that the two police detectives had an articulable suspicion to detain the occupants of the car

and lawfully seized contraband after looking into the car with a flashlight in the brief course of their investigatory activity.

It was about 9:30 at night, and the detectives, both of whom had many years' experience in law enforcement, drove in a certain shopping center on patrol because several business owners had asked the police to keep a check out due to problems particularly in this shopping center with young people and with vandalism. At this hour only the Dairy Queen was open. The detectives noticed a sole car parked in an unlit part of the parking area, at a location where a shopper at West's Lumber Company would park during business hours. It was uncommon to see a lone car parked at the center at night, and they thought at first it was abandoned.

After they turned to ride up to the car, their car lights showed two occupants, who looked at them. The driving detective activated the blue dashboard light to announce their identity. The reaction of the two young males (both age 17) to the symbol of the presence of the police was telling. The detective car was about 15 feet to 20 feet away at this moment. "As soon as they saw that blue light, the driver's eyes got real wide and they began getting very nervous." They frantically began pushing something underneath the seat very quickly. According to the detectives, the presence of the two youths in a darkened car in a dark area away from any activity or lights in a problem area first raised a suspicion, as there was no apparent legitimate reason for them to be there. That suspicion was enhanced by the commotion which the police presence prompted.

The two detectives pulled up next to the car and exited their own because the occupants of the other car did not. The detectives approached, one on each side of defendant's car, and asked them to exit also. Their very hurried exit and rapid movement away from the car as though to draw attention away from it added to the suspicion of criminal activity, in the minds of the detectives. When asked what their business was there, the young men said they were looking for a place to eat but said nothing about the Dairy Queen. There were few if any cars in the parking area for the Dairy Queen, which was about 70' to 80' away. It was uncommon for a car to park in the rear of West Lumber Company and its occupants to walk to the Dairy Queen.

While one detective momentarily detained the two youths, who by now were about 30 feet to 40 feet away from their car, the other detective looked in the passenger side of their vehicle with his flashlight and saw on the floorboard and in an ashtray what his long experience on the narcotics squad led him to believe were marijuana roaches. He walked around to the driver's side and saw through the window a white paper protruding from under the seat where it had appeared the occupants were pushing something. Having seen the marijuana, he reached in and retrieved the paper, which contained

what he knew as blotter acid (LSD). Throughout this encounter, a beeper pager in the car was sounding and displaying telephone numbers continually.

The defendants were then arrested.

The United States Supreme Court has said: "In *Terry* [*v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)] the Court first recognized 'the narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual's personal security based on less than probable cause.' *Michigan v. Summers*, 452 U. S. 692, 698 (1981) . . . [T]he Court implicitly acknowledged the authority of the police to make a *forcible stop* of a person when the officer has reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity. 392 U. S., at 22 . . . When the nature and extent of the detention are minimally intrusive of the individual's Fourth Amendment interests, the opposing law enforcement interests can support a seizure [of person or property] based on less than probable cause . . . In *Terry*, we described the governmental interests supporting the initial seizure of the person as 'effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' 392 U. S., at 22." *United States v. Place*, 462 U. S. 696, 702-704 (103 SC 2637, 77 LE2d 110) (1983). See also *United States v. Hensley*, 469 U. S. 221, 226 (105 SC 675, 83 LE2d 604) (1985), and cases cited therein, regarding automobile stops and detention of occupants.

"*United States v. Brignoni-Ponce*, 422 U. S. 873, 881-882 (1975), was unequivocal in saying that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop . . . The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. See, *e.g., United States v. Brignoni-Ponce, supra* at 881-882; *Adams v. Williams, supra* at 146 . . . [T]o justify [a less-than-probable-cause] seizure an officer must have a reasonable suspicion of criminal activity based on 'specific and articulable facts . . . [and] rational inferences from those facts. . . .' *Terry v. Ohio*, 392 U. S. at 21. See also *Brown v. Texas*, 443 U. S. 47, 51 (1979)." *Florida v. Royer*, 460 U. S. 491, 498, 512 (103 SC 1319, 75 LE2d 229) (1983).

Our Georgia appellate courts have explained these concepts in

applying the United States Supreme Court interpretations of the Fourth Amendment parameters: " 'It is clear that in cases where there are some reasonable articulable grounds for suspicion, the state's interest in the maintenance of community peace and security outweigh the momentary inconvenience and indignity of investigatory detention.' *Brisbane v. State*, 233 Ga. 339, 343 (211 SE2d 294). It is also clear that what is a 'reasonable articulable ground' for the detention may be less than probable cause to make an arrest or conduct a search, but must be more than mere caprice or arbitrary harassment. *Brisbane* [supra, at 342]. Each case depends on its own facts. 'The point at which the routine protection of the public becomes an invasion of the right of privacy of the individual must rest on the particular circumstances involved.' [Cit.]" *Allen v. State*, 140 Ga. App. 828, 830 (1) (232 SE2d 250) (1976). See also *State v. Purdy*, 147 Ga. App. 340 (248 SE2d 683) (1978).

Here there was an articulable suspicion, and it was described at the hearing by the two officers who were functioning in an alert manner to protect the shopping center from criminal activity. As in *Jones v. State*, 156 Ga. App. 730 (275 SE2d 778) (1980), it was a founded suspicion and the seizure of contraband which was in plain view, and was observed by the officer after the brief detention commenced, was valid. As in *Brisbane v. State*, supra, the circumstances created a justifiable suspicion of the conduct of the appellees so as to warrant the limited investigative detention, and the officers acted reasonably under the totality of the circumstances. See also *Anderson v. State*, 123 Ga. App. 57, 61 (179 SE2d 286) (1970); *Tanner v. State*, 114 Ga. App. 35 (150 SE2d 189) (1966).

Concerning seizure of the property, the marijuana and LSD, "[p]robable cause to search an automobile exists when the facts and circumstances before the officer are such as would lead a reasonably discreet and prudent man to believe that the contents of the vehicle offend the law." *Williams v. State*, 167 Ga. App. 42, 43 (1) (306 SE2d 46) (1983); *Parker v. State*, 161 Ga. App. 37, 38 (288 SE2d 852) (1982); *Fuqua v. State*, 142 Ga. App. 632, 633 (236 SE2d 685) (1977). Here the circumstances were measurably enhanced by the roaches in plain view. These the officer had a right to see because he may "visually search the entirety of a car from his vantage point on a street or roadside," *Galloway v. State*, 178 Ga. App. 31, 34 (342 SE2d 473) (1986), and the public parking area of a shopping center would be no different in this regard.

Further, as stated in *Galloway*, supra, "[t]he viewing need not be motivated by any articulable suspicion." Viewing through a car window does not constitute a search. *Catchings v. State*, 256 Ga. 241, 247 (10a) (347 SE2d 572) (1986). And since the roaches, which were contraband, were in plain view and thus seizable, reaching into the inte-

rior of the car thereafter to retrieve the suspect white paper was not an unpermitted warrantless search, since the exigencies of the case, including that this was an automobile, justified it. *Catchings*, supra at 248 (10b).

The use of a flashlight to expose to better light what would otherwise be visible to one who simply looks through the car window does not make the viewing any more of a search or any less of a plain view. *United States v. Lee*, 274 U. S. 559, 563 (5) (47 SC 746, 71 LE 1202) (1927), cited with approval in *Katz v. United States*, 389 U. S. 347, 351 (88 SC 507, 19 LE2d 576) (1967); *Redd v. State*, 240 Ga. 753, 754 (1) (243 SE2d 16) (1978); *State v. Scott*, 159 Ga. App. 869, 870 (1) (285 SE2d 599) (1981). As said in *Marshall v. United States*, 422 F2d 185, 189 (5th Cir. 1970): "The plain view rule does not go into hibernation at sunset."

The order granting the motion to suppress the evidence is reversed.

*Judgment reversed. Deen, P. J., Banke, P. J., Carley and Pope, JJ., concur. Birdsong, C. J., McMurray, P. J., Sognier and Benham, JJ., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent. My detailed examination of the transcript discloses the following facts, as testified to by the two police officers involved in this case. After noting what the officers believed to be an abandoned vehicle and approaching to check the vehicle, the officers observed two persons (appellees) in the car. The officer driving the police car turned on his blue light and stopped "16 to 20 feet" from appellees' car. The officers exited their vehicle and Lieutenant Maloney advised appellees to exit their car; appellees exited their car and walked off in a different direction. According to Lieutenant Maloney, "[w]e never had a chance to get to the vehicle at that point." (Emphasis supplied.) The two officers then stopped appellees 35 to 40 feet from their car. After checking appellees' identification and learning that they were trying to decide where to eat, Lieutenant Maloney decided to check appellees' car while the other officer detained appellees. Maloney testified that he had no idea what he was looking for. It was at this point that he looked in appellees' car *for the first time,* and by use of his flashlight observed some "roaches" in the ash tray and on the back seat. The officer then searched the entire passenger compartment of the car and picked up a letter-sized white envelope from the floor under the front passenger seat. The officer opened the envelope and found an orange card with perforations in it which he recognized as "blotter acid" (LSD). Both officers testified that they had no reports of suspicious activity in the area on the night in question, that appellees were not committing any illegal act, and that at

no time did appellees commit any unlawful act in their presence.

"Articulable suspicion" has no application to a general search; rather, it is the standard applied to determine if a brief, "Terry-type" stop of an individual, including a pat-down for weapons, is a justifiable intrusion on the individual's privacy. *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889). Further, *Terry* limits any "search" to a pat-down of the outer clothing of an individual if the officer believes the person detained is armed and dangerous. Here, the officer who searched appellee's vehicle testified that he and his partner had no fear whatsoever of appellees, did not believe they were armed, and did not even conduct a pat-down to determine if appellees were armed. This court has held that a Terry stop is a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, *and limited in scope* to identification, licensing of a driver and a vehicle if appropriate, a protective pat-down of the outer surface of clothing for weapons if the officer has reasonable apprehension that the person is armed and dangerous, and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop. *State v. Avret*, 156 Ga. App. 527, 528 (1) (275 SE2d 113) (1980).

In the instant case the officers had an articulable suspicion which justified stopping appellees to check their identification and determine what they were doing in the area. Once those facts were ascertained, any further search was limited to a pat-down for weapons. *Terry v. Ohio*, supra. "An automobile in which contraband is concealed and transported may be searched without a warrant *if police have probable cause* for believing the automobile to be searched contains contraband." *Chambers v. Maroney*, 399 U. S. 42 (90 SC 1975, 26 LE2d 419); *Avret*, supra. The right to search and the validity of the seizure are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. Id. Here, the officer who searched appellees' car had no probable cause to believe that the car contained contraband. This is evidenced by the officer's testimony that he had no idea what he was looking for. Thus, an articulable suspicion sufficient to authorize a Terry stop was present here, but probable cause to search the car was not. *Avret*, supra. The argument that the roaches were in "plain view" has no application here, because the plain view doctrine only applies where police are conducting a lawful search. *Coolidge v. New Hampshire*, 403 U. S. 443, 467 (11) (91 SC 2022, 29 LE2d 564). Thus, using the plain view doctrine to justify the search is a classic example of "bootstrapping," since the plain view doctrine does not apply until a lawful search is in progress. The Supreme Court also held in *Coolidge* that plain view alone is never enough to justify the warrantless seizure of evidence; the discovery of evidence in plain view *must be inadvertent*.

Since the officer here had no probable cause to search the vehicle and the discovery of the roaches was anything but inadvertent, I find the search and seizure here unlawful.

In a hearing on a motion to suppress the judge sits as a trier of fact; credibility and weight, and the resolution of conflicts within the testimony of a witness (or witnesses), are matters to be determined by the judge. *State v. Betsill*, 144 Ga. App. 267, 268 (2) (240 SE2d 781) (1977). In the absence of evidence *demanding* a finding contrary to the judge's determination, *this court will not reverse* the ruling granting a motion to suppress. Id. See also *Burnette v. State*, 168 Ga. App. 578, 579 (1) (309 SE2d 875) (1983); *Branch v. State*, 182 Ga. App. 818, 819 (1) (357 SE2d 136) (1987). I find no evidence demanding a finding contrary to the judge's determination. Accordingly, I would affirm.

I am authorized to state that Chief Judge Birdsong, Presiding Judge McMurray and Judge Benham join in this dissent.

DECIDED JULY 16, 1987 —
REHEARINGS DENIED JULY 31, 1987 —

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellant.
*Kenneth S. Waldrop, Ivan A. Pearlberg*, for appellees.