A91A1587. BRIMER v. THE STATE.

(411 SE2d 128)

BIRDSONG, Presiding Judge.

This appeal is by John Benjamin Brimer of the trial court's denial of his motion to suppress in a prosecution for possession of cocaine, to which Brimer pleaded guilty and the trial court permitted appellant to reserve the right to appeal the denial of his motion to suppress.

On September 23, 1990, the Heard County Sheriff's Department received an anonymous call alleging that there was a party going on at a certain residence on Cherry Road where underage persons were drinking alcohol and using drugs. Similar calls had been received about such activities at this house in the past. Deputy John Bennaman, who was the senior officer and "supervising officer on duty" that evening, determined to set up a roadblock about 75 yards from the house on the public road between the house and Highway 34, "to protect the public, to keep anybody under the influence of drugs from getting on the public highway [and] killing or maiming anybody." The roadblock was designed to stop vehicles traveling in either direction; each vehicle was stopped and the driver was asked for his license and proof of insurance and was observed for proof of intoxication.

Appellant was stopped at the roadblock after leaving the house. Deputy Bennaman smelled alcohol on appellant and saw appellant's eyes were dilated; he asked appellant to get out and take a sobriety test. Another white male sat in the passenger seat of appellant's vehicle. While another deputy gave appellant a sobriety test, Deputy Bennaman "looked over in the van for any weapons that might be used against us. And as I looked over at the driver's seat, laying on the floor was a plastic, small plastic pouch with white powder in it; and I confiscated it." *Held:*

1. As to the procedure used by appellant of pleading guilty while reserving the issue of denial of his motion to suppress, see *Mims v. State*, 201 Ga. App. 277 (410 SE2d 824).

2. Appellant contends on appeal, first, that the roadblock was an improper basis for a lawful search and seizure because it was a mere pretext or subterfuge to stop vehicles and search for drugs such as is condemned in *Brisbane v. State*, 233 Ga. 339, 343 (211 SE2d 294), and was not properly conducted pursuant to the standard which he alleges was established in *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693).

Georgia courts have held that the police may operate roadblocks for the purpose of checking the legality of the operation of vehicles, "without the necessity of any particularized suspicion of wrongdoing." *Kan v. State*, 199 Ga. App. 170 (404 SE2d 281). In *Brisbane*, supra at 343, the Georgia Supreme Court in dictum expressed disapproval of the use of "license checks" as a subterfuge to stop and search vehicles "when they are under no founded suspicion." However, that decision involved a random, discriminate stop of a vehicle; in *State v. Swift*, 232 Ga. 535-536 (207 SE2d 459), involving a roadblock set up at the entrance to Jekyll Island during a rock concert "to check for drivers' licenses, for car inspection stickers . . . for fugitives and for runaways," (id. at 535), the same court said: " 'The state can practice preventative therapy by reasonable road checks to ascertain whether man and machine meet the legislative determination of fitness. That this requires a momentary stopping of the traveling citizen is not fatal. Nor is it because the inspection may produce the irrefutable proof that the law has just been violated. The purpose of the check is to determine the present, not the past: *is* the car, *is* the driver now fit for further driving? In the accommodation of society's needs to the basic right of citizens to be free from disruption of unrestricted travel by police officers stopping cars in the hopes of uncovering the evidence of non-traffic crimes (cits.), the stopping for road checks is reasonable and therefore acceptable. . . .' " Id., citing *Myricks v. United States*, 370 F2d 901, 904; and *Connor v. State*, 130 Ga. App. 74 (202 SE2d 200).

We did not establish, in *State v. Golden*, supra, specific immutable standards for determining the "reasonability" of a police roadblock, although we did find the roadblock in that case was reasonable. The general factors in *State v. Golden* were that the procedures did not involve random and arbitrary detention of vehicles, but were organized by experienced superiors for the stopping of all vehicles at the checkpoint, leaving no discretion to officers to focus randomly or discriminately on particular persons; and the stops themselves were minimal and reasonable in terms of time and intrusion. See also *Evans v. State*, 190 Ga. App. 856, 857 (380 SE2d 332).

We do not find the roadblock in this case was unreasonable or was itself an invasion of Fourth Amendment rights. The deputy ordering and conducting the roadblock was an experienced senior officer, and that night also was the "supervising officer on duty," who determined that a roadblock was necessary for public safety at that place and time, to determine "whether man and machine meet the legislative determination of fitness" (*State v. Swift*, supra at 535); this purpose and design was neither unreasonable nor arbitrary in the facts of this case. That his reasons, as "supervising officer on duty," for establishing the roadblock were founded upon an anonymous tip or hearsay does not give rise to a conclusion that the roadblock was an unreasonable intrusion upon citizens traveling that public roadway. See *Holbrook v. State*, 177 Ga. App. 318, 320 (339 SE2d 346); see *Griggs v. State*, 167 Ga. App. 581 (1) (307 SE2d 75). We have held an organized and non-discriminate road check to be not unreasonable where the State failed to introduce any evidence at all as to the manner in which the roadblock was implemented or conducted (*Sapp v. State*, 188 Ga. App. 700 (374 SE2d 114)), whereas the roadblock here was proved reasonable in purpose and reasonably conducted. The trial court expressly adopted the testimony of Officer Bennaman, whose evidence supports a finding that this roadblock was not a subterfuge or pretext to target appellant. The roadblock was established because of a "founded" concern (see *Brisbane*, supra) for public safety. We find no reason not to accept the findings of fact of the trial court on the motion to suppress. *State v. Swift*, supra at 536.

3. Appellant contends the warrantless search of appellant's vehicle was unlawful because the contraband was not in plain view. According to appellant, "Deputy Bennaman . . . admitted in his testimony that it was necessary for him to *lean into the appellant's vehicle* and look around before he actually saw the plastic pouch containing the illegal substance"; and that "the [deputy] testified that it was necessary for him to *lean inside the appellant's vehicle*, look inside the driver's seat, under the driver's seat, and over between the driver's seat and passenger seat before he actually saw the contraband." (Emphasis supplied.)

We find this characterization of the evidence to be over-zealous. The deputy did not, as appellant contends, testify that he *leaned into* the vehicle or that it was "necessary for him to *lean inside* the vehicle, lean inside the driver's seat, under the driver's seat, and over between the driver's seat and passenger seat before he actually saw the contraband." He testified: "I leaned over looking in the van for any knife or gun or weapon that could be used against us. [The bag of white powder] was laying on the floorboard in plain view." The trial court then asked the deputy: "Did you actually get in the van?" The deputy replied: "No, sir." "You leaned in and looked?" "Yes, sir."

Then, asked if he had to lean in the van and look around the seat, the deputy answered: "I looked over on the floor for any knife or gun, and [the bag] was laying — It was not covered up, wasn't concealed. It was just laying there." He further testified: [The] passenger was sitting in the passenger seat. The driver's door was open. I was at the driver's door, and I was looking in the van around the front seat any place the passenger could reach . . . if he was in the vehicle." Bennaman also testified: "And it is our general policy to check any place anybody in the vehicle could reach for a weapon for our safety. . . . *As I walked up to the van, I looked* in the front of the driver's seat, *looked under, looked over* between the seats, and it laid right along side the seat *in plain view.*" (Emphasis supplied.)

The evidence at best shows only that the officer did not actually get in the van, but "leaned in and looked." This could mean the officer leaned "over" without entering the vehicle, or that he stood in the open driver's side doorway and leaned his body "in" between the open door and the door frame, "and looked." None of the evidence indicates unequivocally that any portion of the officer's body entered the interior of the vehicle. The evidence supports a finding that the officer was lawfully in position to obtain a view of the evidence which was immediately seen to be incriminating, and that he was where he was entitled to be and did not violate appellant's Fourth Amendment rights in the process of establishing his vantage point. See *State v. Webb,* 193 Ga. App. 2, 4-5 (386 SE2d 891). This is obviously the view taken by the trial court, and we find no reason or authority to disregard it. See *State v. Swift,* supra at 536.

*Judgment affirmed. Pope and Cooper, JJ., concur.*

DECIDED OCTOBER 3, 1991.

*Wood, Odom & Edge, Arthur B. Edge IV,* for appellant.
*William G. Hamrick, Jr., District Attorney, David P. Oliver, Assistant District Attorney,* for appellee.