## 55194. ORR v. THE STATE.
## 55195. SCALES v. THE STATE.

QUILLIAN, Presiding Judge.

Theodore Orr and Larry Scales appeal their conviction of armed robbery.

Theodore Orr was driving a 1965 Pontiac Bonneville, maroon color, on the night of January 17, 1977. He was accompanied by his brother, Andrew Orr, and Larry Scales. They testified that they stopped at Paul Scott's grocery store on Georgia Highway 53 in Gordon County, Scottsville community, to get something to eat. Andrew Orr and Scales entered the grocery store but Theodore Orr drove down the road "to relieve himself." Mr. Scott was preparing to close and had taken the money from the cash register and placed it in a paper sack. Mr. James Jernigan

was also present in the store. Mr. Scott heard someone yell "Freeze." He looked around and saw two black men. One of the men had a gun and beat him about the head. The gun was fired one time.

Mr. Jernigan turned and saw the two black men. He testified: "They jumped us. One hit Paul [Scott] and the other one knocked me down." He heard one shot fired. He was searched but nothing was taken from him. He cannot identify either defendant as one of the robbers.

Mr. Scott testified that they took $900 in $20 bills which he had concealed in his sock, and approximately $500 he had just removed from the cash register. They asked for, and he gave them, the keys to his car. He saw them leave in the direction of Plainville. He tried to flag a car down that came by, a "65 or 66 Pontiac," a red one. He had seen it before that same day. The police arrived within a few minutes and they relayed the information to the dispatcher who put out a radio bulletin.

Wayne Mitchell, Floyd County Police Department patrolman, heard the report of the *armed* robbery and the lookout was for a "late model Pontiac Bonneville . . . green . . . [and] [t]wo black males." They saw a Pontiac Bonneville but couldn't see what color it was. He turned his lights on bright and saw that it was being driven by one black male. The car was "going real slow . . . 25 or 30 miles per hour . . . [where] the speed limit is 55 . . . he started weaving over the roadway, across the centerline a couple of times, he came back across the white line and on the right-hand shoulder . . .the car was weaving, and that's the reason I turned the blue lights on and stopped him." Officer Mitchell said he "thought he might be driving under the influence. . ."

Theodore Orr was the driver. Officer Mitchell stated, "he acted kind of suspicious and threw his hands up like this [No description given for the record by anyone.] . . . he came at a fast rate, sort of, back to the back of the car . . . I walked around, because he was acting very suspicious like he didn't want me to go close to the car . . . I shined the flashlight into the car, and I saw two black men lying in the floorboard of the back seat . . . I drew my service revolver, and I held it on them, and told them I'd better see hands and I wanted them to step out of that car . . . we told

them to put their hands on the car . . . I noticed Scales in the back seat, he had a jacket on and you could see the money in the pocket opened up as he had his hands up there it was in clear view, and also the other subject, I believe it's Andrew — Andrew Orr, you could see money in his pockets also as he had his hands up on there . . . [I] looked in the back seat, and I saw a pistol lying in the floor board . . . where they were."

A search of Theodore Orr was negative. A search of Scales revealed $39.14. A search of Andrew Orr revealed $301.81, $232 in food stamps, a $5 check and a .22 calibre pistol. The pistol had the trigger guard bent over the trigger. A search of the Scott grocery store turned up the expended bullet from the pistol which was discharged during the robbery. The gun and the bullet were turned over to the State Crime Lab. A "micro-analyst" in firearms identification was of the opinion that the bullet found in Scott's grocery store was fired from the gun found on Andrew Orr. Mr. Scott identified defendant Scales as the person who accompanied the robber with the gun. Mr. Scott could not identify Theodore Orr. *Held:*

55195. Scales v. The State.

1. Defendant Scales has enumerated but one error — that the trial court erred in denying his "motion for a new trial based on the general grounds." Scales was identified by Mr. Scott as the individual who entered his grocery store in the company of the robber with the gun. Mr. Jernigan testified that "[t]hey jumped us." The man with the gun attacked Mr. Scott and the other man (Scales) "knocked me down." Scales was found in the company of Andrew Orr immediately after the robbery. Andrew Orr had the weapon that was used during the robbery to fire one bullet and the gun apparently suffered a bent trigger guard in the assault upon Mr. Scott.

On appeal, in passing on the sufficiency of the evidence, we are to afford evidence that view which is most favorable to the appellee, "for every presumption and every inference is in favor of the verdict." *Peluso v. State,* 139 Ga. App. 433, 434 (228 SE2d 395). The jury is the final arbiter of the credibility of the witnesses and the weight of the evidence. They resolved the issues against the defendant. " 'If there is any evidence to support the

jury findings, no error of law appearing, we will not disturb the verdict.' " *Lenear v. State,* 239 Ga. 617, 618 (238 SE2d 407). We find the direct and circumstantial evidence, taken together, sufficient to support the verdict. The trial court did not err in denying defendant's motion for a new trial.

### 55194. Orr v. The State

2. Defendant Orr alleges the trial court erred in not granting his motion to suppress evidence seized by the police after stopping the car he was driving and failing to grant his motion for new trial based upon this same ground. He "contends that the stopping of his car by the officers was without any articulable suspicion . . . that Theodore's car or that Theodore Orr had been involved in any way in the robbery of Paul D. Scott . . . [T]herefore the stopping of his vehicle by the officers was both impermissible and illegal . . ."

Defendant apparently refers to the rule arising from Terry v. Ohio, 392 U.S. 1 (19) (88 SC 1868, 20 LE2d 889), which requires "specific and articulable facts which taken together with rational inferences from those facts" warrant a police officer in making a stop of an individual to investigate the circumstances which initiated the suspicion. "What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing." *Brisbane v. State,* 233 Ga. 339, 341 (211 SE2d 294).

The arresting officers were aware of an *armed* robbery occurring in the Scottsville community shortly before the apprehension of the defendant. Defendant's car was coming from the direction of the Scottsville community. The officers had been alerted to be on the lookout for a late model green Pontiac with "three black males." Defendant's car was a late model maroon Pontiac and only the black driver was visible. The officers decided to stop the vehicle.

The district attorney called only one of the arresting officers at the hearing on the motion to suppress. He was not the one whose testimony is summarized in the preface. Accordingly, we will determine the legality of the search upon the testimony at the suppression hearing. This

police officer saw Patrolman Mitchell get out of the police car and go to the defendant's car. Patrolman Mitchell "shouted... Jack, we've got something, get us a backup." At that time the officer saw "two individuals come up out of the backseat of the car." The three individuals were then searched and the items found were the basis of the motion to suppress by the defense.

We find sufficient "specific and articulable facts which taken together with rational inferences from those facts" to warrant the police officers to stop the defendant's vehicle. The officers were aware of the *armed* robbery occurring in the Scottsville community *shortly before* defendant's apprehension. They were on the lookout for a late model Pontiac with 3 blacks. Defendant's car was a late model Pontiac with a black driver. Although the color did not match, the officers had sufficient specific and articulable facts to justify the stop. See *Allen v. State,* 140 Ga. App. 828, 830 (232 SE2d 250).

After the stop, the suspicious actions and sudden appearance of two men from the backseat of the car, justified the officers in making a protective pat-down of the three suspects as they were looking for three black males and they were known to be armed. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889).

After the police officers had observed the two men emerge from their hiding place and the men were placed in a leaning position on the car, the defendants were lawfully under arrest and subject to a full search of their person. United States v. Robinson, 414 U. S. 218, 225 (94 SC 467, 38 LE2d 427); Adams v. Williams, 407 U. S. 143, 149, supra; *Godwin v. State,* 133 Ga. App. 397, 398 (211 SE2d 7); Code Ann. § 27-301 (c) (Ga. L. 1966, p. 567). The trial court did not err in failing to suppress the items seized from the defendants.

3. It is alleged that the trial court erred in failing to grant defendant's motion for a new trial on the basis that a "proper foundation had not been laid for [the gun's] introduction." Specifically, the defendant claims the chain of custody of the weapon was not established.

Officer Mitchell found the weapon on defendant Andrew Orr after he was arrested in the car the defendant Theodore Orr was driving. Mitchell marked the items and

then took them to the Floyd County Police Department. Mr. Evans testified that he went to the Floyd County Police Department around midnight of the same day the robbers were apprehended and "got the revolver from Mr. — Well, in fact, Mr. Mitchell, Floyd Investigator Tommy Shiflett, were all there in the police department." Mr. Evans delivered the pistol to Mr. Fite in the State Crime Lab, and Mr. Fite testified for the state that the revolver he received from Mr. Evans was the weapon that fired the bullet found in Mr. Scott's grocery store. The chain of custody established by the evidence clearly meets the tests of *Painter v. State,* 237 Ga. 30, 33 (226 SE2d 578) and *Pryor v. State,* 238 Ga. 698, 705 (234 SE2d 918).

4. The last enumeration of error asserts the trial court erred in failing to grant defendant's motion for new trial "on the general grounds that the verdict was not supported by the evidence." In order to sustain a judgment of conviction based on circumstantial evidence, the evidence need not exclude every inference or hypothesis except guilt of an accused but only reasonable inferences and hypothesis, so as to justify the inference beyond a reasonable doubt. *Rogers v. State,* 139 Ga. App. 656, 659 (229 SE2d 132). Questions as to reasonableness of the evidence are to be decided by the jury, and where the jury finds the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis except that of guilt, an appellate court will not disturb such finding unless unsupported as a matter of law. *Staymate v. State,* 237 Ga. 661 (1) (229 SE2d 421). We find no merit in this enumeration.

*Judgment affirmed. Webb and McMurray, JJ., concur.*

ARGUED FEBRUARY 6, 1978 — DECIDED MARCH 10, 1978 — REHEARING DENIED MARCH 30, 1978, IN CASE NO. 55194 — CERT. APPLIED FOR.

*Shanahan & Shanahan, Thomas E. Shanahan, Langford, Pope & Bailey, R. Thomas Pope,* for Orr.
*Eugene F. Edge,* for Scales.
*Charles Crawford, District Attorney, T. Joseph*

*Campbell, Assistant District Attorney,* for appellee.