## 65299. SMITH v. THE STATE.

BANKE, Judge.

On appeal from his conviction for armed robbery, the appellant contends that the trial court erred in denying his motion to suppress evidence seized from the automobile which he was driving at the time of his arrest.

The victim testified that he was robbed by two men armed with sawed-off shotguns at about 2:30 a.m. on March 16, 1981, as he was finishing some cleaning work at the Western Steer restaurant located just outside of Snellville on Highway 78 in Gwinnett County. He reported the robbery to the police immediately, describing his assailants as two black males dressed in dark clothing, one of whom was wearing a toboggan hat and the other a black wig.

Gwinnett County police officer John Phillip Davis testified that while on patrol at about 3:00 a.m. on the night in question, he received a radio bulletin to the effect that the Western Steer had been robbed and advising that the perpetrators were two black males armed with sawed-off shotguns and dressed in dark clothing, one of whom was wearing a gray colored toboggan hat. No vehicle description was given. Officer Davis immediately drove to Highway 78 a few miles west of Snellville and, within five minutes of hearing the radio report, observed a car travelling west towards DeKalb County, apparently occupied by two black males. As this car passed in front of his headlights, he observed that the individual on the passenger side was wearing a gray toboggan hat. His suspicions thus aroused, Officer Davis pulled onto the highway and followed the vehicle for several miles while waiting for a backup unit to arrive. He testified that he witnessed no traffic violations nor any irregular driving while following the vehicle and that he was able to observe that there were actually three men in the car rather than two. When the backup unit arrived, the two patrolmen pulled the car over, ordered the three occupants out at gunpoint, and subjected them to a pat-down search for weapons. None were found, nor was any other incriminating evidence discovered at this time.

While the pat-down search was being completed, a third officer, Detective Holloman, arrived on the scene. He testified that he asked the appellant (who was the driver) if he minded if they searched the vehicle and stated that the appellant responded, "No, I haven't done nothing." The officers testified that no threats were made to secure the appellant's consent and that no weapons were pointed at him at this time. The appellant admitted at trial that he did in fact give his consent to Detective Holloman and testified that he was trying to cooperate with the officers. In addition, it appears that the appellant

actively gave his assistance to the search by opening the trunk latch with a screwdriver.

The initial search of the vehicle's interior and trunk revealed no incriminating evidence; however, a search of the engine compartment under the hood revealed two sawed-off shotguns and a white money bag lodged between the grill and the radiator. The passenger compartment was then subjected to renewed scrutiny, resulting in the discovery and seizure of a black wig and gray toboggan hat. The three suspects were formally placed under arrest at this time, and the victim's wallet was recovered from the pocket of one of the appellant's companions. *Held:*

1. A police officer is authorized to make a brief, investigatory detention of an individual for the purpose of maintaining the status quo and obtaining information, provided he can point to specific and articulable facts which, together with rational inferences drawn therefrom, reasonably warrant such an intrusion. See Terry v. Ohio, 392 U.S. 1 (88 SC 1868, 20 LE2d 889) (1968); Adams v. Williams, 407 U.S. 143, 146 (92 SC 1921, 32 LE2d 612) (1972); *Brisbane v. State,* 233 Ga. 339 (211 SE2d 294) (1974); *Reese v. State,* 145 Ga. App. 453 (1) (243 SE2d 650) (1978). "What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing. (Cit.)" *Brisbane v. State,* supra, at 341.

The detention of the appellant and his companions in this case was clearly based on specific and articulable facts giving rise to a reasonable suspicion that they had been involved in a robbery. We reject the appellant's contention that, by ordering him and his companions out of the vehicle at gunpoint, the officers immediately converted the detention into a full-fledged arrest requiring probable cause. The police are entitled to take reasonable and appropriate precautions when effecting a "Terry stop" to protect themselves from suspects believed to be armed and dangerous. See *Orr v. State,* 145 Ga. App. 459 (244 SE2d 247) (1978).

2. The trial court was authorized by the evidence to find that the appellant consented to the search of the automobile freely and voluntarily and not as the result of coercion, duress, or deceit. See generally *Code v. State,* 234 Ga. 90, 93 (214 SE2d 873) (1975). Unlike the cases of *Radowick v. State,* 145 Ga. App. 231 (2) (244 SE2d 346) (1978), and *Flournoy v. State,* 131 Ga. App. 171 (205 SE2d 473) (1974), this is not a case where the defendant was detained for an inordinate length of time before he finally gave his consent, nor is it a case where the defendant was led to believe that if he did not give his consent, a search warrant would be obtained, and the search would consequently be conducted anyway before he was released. Similarly,

the facts of this case are distinguishable from those in *Love v. State,* 144 Ga. App. 728 (242 SE2d 278) (1978), wherein a majority of this court found that the defendant's consent had been extracted by an overwhelming display of force. In *Love,* which was recently overruled on other grounds in *Parker v. State,* 161 Ga. App. 37 (288 SE2d 852) (1982), the defendant was surprised by a half-dozen heavily armed police officers as he was walking out of his motel room, and his automobile keys were extracted from him immediately. Although the appellant in the case before us now was initially ordered out of his car at gunpoint, it appears that the police were no longer pointing weapons at him at the time he was asked for permission to search the vehicle and that he in fact actively assisted the officers in conducting the search. Indeed, he admitted at trial that he gave his consent, not in response to threats or coercion, but out of a desire to be cooperative. Finally, we note that this is not a case in which the defendant inexplicably consented to a search which was certain to turn up incriminating evidence. Compare *Code v. State,* supra, at 93. Rather, the appellant in this case undoubtedly acted out of a belief that the officers were unlikely to look under the hood for incriminating evidence.

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED JANUARY 19, 1983 —
REHEARING DENIED FEBRUARY 4, 1983.

*William T. Hudson, Jr.,* for appellant.
*W. Bryant Huff, District Attorney, Stephen E. Franzen, Assistant District Attorney,* for appellee.