## 67518. BAKER v. THE STATE.

POPE, Judge.

William H. Baker, Jr. brings this appeal from his conviction of armed robbery. *Held*:

1. Appellant first enumerates as error the trial court's denial of his motion to suppress. As is pertinent to the issue here, the facts of record, construed in a light most favorable to the state, show the fol-

lowing. The clerk of the Junior Food Store # 99 in Moultrie, Georgia was robbed at gunpoint by three black males shortly before 10:15 p.m. on January 11, 1983. The victim did not observe any "get-away" vehicle. At approximately 10:15 p.m. detectives Morris and Rabon of the Moultrie Police Department received a telephone call reporting the armed robbery. Morris and Rabon, who were at the police department headquarters, left in separate cars, responding to the call. Rabon proceeded east along the Quitman Highway, a street taking him in front of the convenience store. Morris proceeded east on 5th Avenue, a street that would have taken him behind the store. The Quitman Highway and 5th Avenue run generally parallel and eventually converge at a point just east of the Junior Food Store # 99.

As Morris proceeded east along 5th Avenue, he observed a small black Mercury Comet hurriedly turn left onto 12th Street from 5th Avenue in the area of the V. F. W. At this time he observed three black males in the car. Morris' suspicions were aroused and he followed the car and attempted to radio its tag number into the police department. Morris observed other cars proceeding along 5th Avenue, but this black car immediately caught his attention. It was Morris' testimony, from his experience as a police officer in Moultrie, that it would take 3 or 4 minutes to get from the Junior Food Store # 99 to the area of the V. F. W. proceeding west along 5th Avenue. It was also his testimony from his police experience that, proceeding east along 5th Avenue, it would take 3 or 4 minutes to get from the Moultrie Police Department to the area of the V. F. W.

As Morris followed the small black car, it stopped at 706 12th Street, S.E., the residence of appellant Baker. The car pulled into the driveway and pulled up close to the front door. Morris angled his unmarked police car so that the headlights would be shining on the small black car. Morris, who was in civilian clothes, never turned on his blue lights or siren. Upon both cars coming to a stop, the three black males began exiting their car. Appellant got out on the driver's side. Charles Merritt got out on the passenger's side. A third unidentified individual got out of the back seat on the passenger's side. Morris called out for the three men to come to him and Baker and Merritt complied. Morris observed the third person "fumbling" with something in front of him as he got out of the back seat. Morris could not see this person's face. This unidentified individual then walked toward the house, around behind a pickup truck that was parked close to the house, and then continued around the north side of the house, apparently leaving the scene. Morris twice called out for this person to stop, but he never complied and continued on around the house.

As Baker and Merritt approached, Morris asked for identification from both of them. Baker provided Morris with a driver's license;

Merritt stated he did not have any identification on him and walked back to the passenger's side of the car "and started to mess around inside the vehicle." During this entire period of time before other officers arrived, Morris was standing in the public road which ran in front of appellant's residence; he also never pulled his gun. Morris asked appellant who the third unidentified person was that had also gotten out of the car and appellant replied, "What other subject?" or "Who? There's not but two of us." At this time, Morris was still the only law enforcement officer at the scene.

At about this time, Lieutenant Boyd of the Moultrie Police Department and other law enforcement officers arrived at the scene, answering Morris' call for assistance. Morris explained to a deputy sheriff that one black male had gone around the house, and the deputy began a search for this person. Morris then began to explain to Lt. Boyd what had transpired. Morris had observed, and Boyd then observed, that Merritt was wearing a brown jacket. The radio call had described one of the robbers as wearing a brown jacket. Both Morris and Boyd also knew a gun had been involved in the robbery. Morris also advised Boyd that one of the occupants of the car had left the scene. Merritt at this time was acting very nervous and "fidgety." Boyd testified that he then asked Morris "if he was sure . . . there was anybody else. And then I walked over into the yard to look into the car, to see if there was anybody else in the vehicle." When Boyd got to the car, he shined his flashlight into the back floorboard on the passenger's side and there in plain view saw a pistol and money bags with money protruding from the bags. Boyd testified, "There was three black males involved in an armed robbery. One of those black males, when I got to the scene, fit the description, with the brown coat. One man had ran. In my opinion there could have been somebody else in the car. For safety's sake, I went and looked in the car." Boyd came back to Morris and told him what he had seen. Appellant and Merritt were then taken into custody.

Appellant's car was towed to the Moultrie Police Department where, following standard police department policy, the car was impounded and inventoried. More evidence and fruits of the armed robbery of the Junior Food Store # 99 were found at different locations inside the car: a green toboggan cap, a pistol, a paper bag with money in it and two green bank bags with money in them. One money bag was found under the seat on the passenger's side. When Rabon carried the items back to the convenience store, the victim identified the pistol and toboggan as those used and worn by the perpetrators and the paper bag and money bags as those taken in the robbery.

Appellant attacks the search of his car on the grounds that (1) there were insufficient specific and articulable facts to warrant his detention by Det. Morris and (2) Lt. Boyd had no right to be on appel-

lant's property when he observed the pistol and money bags in appellant's car "in plain view." We disagree. On the basis of the foregoing facts — the officer's knowledge of the victim's description of the crime and its perpetrators, the proximity of appellant's car to the scene of the crime when it was first observed, the car's hurried departure from 5th Avenue, the presence of three black males in the car, and the flight of one of the car's occupants — we find the detention of appellant and Merritt was clearly based upon specific and articulable facts which gave rise to a reasonable suspicion that the three men in the small black car had been involved in the subject armed robbery. Thus, Det. Morris was authorized to briefly detain appellant for the purpose of further investigation. See *Smith v. State*, 165 Ga. App. 333 (1) (299 SE2d 891) (1983), and cits. Moreover, these same circumstances authorized Lt. Boyd to enter upon appellant's property to check the car for weapons and/or the presence of a potentially armed individual concealing himself therein. See Michigan v. Long, __ U. S. __ (103 SC 3469, 77 LE2d 1201, 1217-21) (1983). Thus, the trial court did not err in denying appellant's motion to suppress the items taken from appellant's car for any reason assigned. See *Allen v. State*, 140 Ga. App. 828 (2) (232 SE2d 250) (1976); *Lofton v. State*, 122 Ga. App. 727 (178 SE2d 693) (1970).

2. In light of the evidence of record, set forth in major part in Division 1 of this opinion, we conclude that any rational trier of fact could have found appellant guilty of armed robbery beyond a reasonable doubt. See *Hendricks v. State*, 167 Ga. App. 829 (308 SE2d 19) (1983).

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED APRIL 18, 1984.

*Dwight H. May*, for appellant.

*H. Lamar Cole, District Attorney, James B. Thagard, Assistant District Attorney*, for appellee.